## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| BARBARA and GEORGE PRICE, *on behalf of their daughter O.P., a minor, and individually on their own behalf,* )<br>)<br>)<br>)<br>) | CIVIL ACTION<br>NO. 3:11-cv-00095-JHS<br>(HON. JOEL H. SLOMSKY) |
| *Plaintiffs,* )<br>) | |
| v. )<br>) | **ORDER** |
| SCRANTON SCHOOL DISTRICT, *et al.,* )<br>)<br>) | **(Jury Trial Demanded)** |
| *Defendants.* )<br>) | |

### ORDER

AND NOW, this          day of                    , 2011      , upon

consideration of the Motion to Dismiss Plaintiffs' First Amended Complaint

on behalf of Defendants Scranton School District, Robert Lesh, Robert

Sheridan, William King, Barbara Dixon, Kevin Rogan, Melissa Rose, Julie

Maloney, Karyn Schaeffer, Amy Lloyd, Maria Rossi and Lynne Michael

(the "School District Defendants"), and Plaintiffs' Response in Opposition

thereto, it is hereby ORDERED that the Motion is DENIED.

BY THE COURT:

_____

SLOMSKY, JOEL, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BARBARA and GEORGE PRICE, *on behalf of their daughter* O.P., *a minor, and individually on their own behalf,* | ) ) ) ) | CIVIL ACTION NO. 3:11-cv-00095-JHS (HON. JOEL H. SLOMSKY) |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | **ORDER** |
| SCRANTON SCHOOL DISTRICT, *et al.,* | ) ) ) | **(Jury Trial Demanded)** |
| *Defendants.* | ) ) | |

## ORDER

AND NOW, this        day of                    , 2011      , upon consideration of the Motion to Dismiss Plaintiffs' First Amended Complaint on behalf of Defendants James and Julie Maloney and T.M., a minor, and Plaintiffs' Response in Opposition thereto, it is hereby ORDERED that the Motion is DENIED.

BY THE COURT:

_____

SLOMSKY, JOEL, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA  and GEORGE PRICE, *on behalf of their daughter* O.P., *a minor, and individually on their own behalf,*  )<br><br>*Plaintiffs,*  )<br><br>v.  )<br><br>SCRANTON SCHOOL DISTRICT, *et al.,*  )<br><br>*Defendants.*  ) | CIVIL ACTION<br>NO. 3:11-cv-00095-JHS<br>(HON. JOEL H. SLOMSKY)<br><br>**ORDER**<br><br>**(Jury Trial Demanded)** |

## ORDER

AND NOW, this          day of                    , 2011       , upon consideration of the Motion to Dismiss Plaintiffs' First Amended Complaint on behalf of Defendants Peter and Cindy Petrucci and J.P., a minor, and Plaintiffs' Response in Opposition thereto, it is hereby ORDERED that the Motion is DENIED.

BY THE COURT:

_____

SLOMSKY, JOEL, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| BARBARA and GEORGE PRICE, *on behalf of their daughter* O.P., *a minor, and individually on their own behalf,* ) ) ) ) | CIVIL ACTION NO. 3:11-cv-00095-JHS (HON. JOEL H. SLOMSKY) |
| *Plaintiffs,* ) | |
| v. ) | **ORDER** |
| SCRANTON SCHOOL DISTRICT, *et al.,* ) ) | **(Jury Trial Demanded)** |
| *Defendants.* ) | |

## ORDER

AND NOW, this          day of                    , 2011       , upon

consideration of the Motion to Dismiss Plaintiffs' First Amended Complaint

on behalf of Defendants Anthony and Tina Rasalla and A.R., a minor, and

Plaintiffs' Response in Opposition thereto, it is hereby ORDERED that the

Motion is DENIED.

BY THE COURT:

_____
SLOMSKY, JOEL, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| BARBARA  and GEORGE PRICE, *on behalf of their daughter* O.P., *a minor, and individually on their own behalf,* | ) ) ) ) |
|  | ) CIVIL ACTION |
|  | ) NO. 3:11-cv-00095-JHS |
| *Plaintiffs,* | ) (HON. JOEL H. SLOMSKY) |
|  | ) |
| v. | ) **ORDER** |
|  | ) |
| SCRANTON  SCHOOL  DISTRICT, *et al.,* | ) **(Jury Trial Demanded)** ) |
|  | ) |
| *Defendants.* | ) |
|  | ) |

## ORDER

AND NOW, this          day of                    , 2011      , upon

consideration of the Motion to Dismiss Plaintiffs' First Amended Complaint

on behalf of Defendants Paul and Colleen Kelly and K.K., a minor, and

Plaintiffs' Response in Opposition thereto, it is hereby ORDERED that the

Motion is DENIED.

BY THE COURT:

_____

SLOMSKY, JOEL, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA and GEORGE PRICE, *on behalf of their daughter O.P., a minor, and individually on their own behalf,* ) ) ) ) | |
| | CIVIL ACTION |
| | NO. 3:11-cv-00095-JHS |
| *Plaintiffs,* ) ) | (HON. JOEL H. SLOMSKY) |
| | |
| v. ) ) | **ORDER** |
| | |
| SCRANTON SCHOOL DISTRICT, *et al.,* ) ) ) | **(Jury Trial Demanded)** |
| | |
| *Defendants.* ) ) | |

## <u>ORDER</u>

AND NOW, this          day of                    , 2011      , upon

consideration of the Motion to Dismiss Plaintiffs' First Amended Complaint

on behalf of Defendants Gene and Yvette Creegan and B.C., a minor, and

Plaintiffs' Response in Opposition thereto, it is hereby ORDERED that the

Motion is DENIED.

BY THE COURT:

_____

SLOMSKY, JOEL, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| BARBARA  and GEORGE PRICE, *on behalf of their daughter O.P., a minor, and individually on their own behalf,*  ) ) ) ) | CIVIL ACTION NO. 3:11-cv-00095-JHS (HON. JOEL H. SLOMSKY) |
| *Plaintiffs,*  ) ) | |
| v.  ) ) | **ORDER** |
| SCRANTON  SCHOOL  DISTRICT, *et al.,*  ) ) ) | **(Jury Trial Demanded)** |
| *Defendants.*  ) ) | |

## ORDER

AND NOW, this            day of                      , 2011      , upon consideration of the Motion to Dismiss Plaintiffs' First Amended Complaint on behalf of Defendants Wayne and Nancy Hiller and A.H., a minor, and Plaintiffs' Response in Opposition thereto, it is hereby ORDERED that the Motion is DENIED.

BY THE COURT:

_____

SLOMSKY, JOEL, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| BARBARA and GEORGE PRICE, *on behalf of their daughter O.P., a minor, and individually on their own behalf,* | ) ) ) ) |
|  | ) CIVIL ACTION |
|  | ) NO. 3:11-cv-00095-JHS |
| *Plaintiffs,* | ) (HON. JOEL H. SLOMSKY) |
|  | ) |
| v. | ) **ORDER** |
|  | ) |
| SCRANTON SCHOOL DISTRICT, *et al.,* | ) **(Jury Trial Demanded)** |
|  | ) |
| *Defendants.* | ) |
|  | ) |

## ORDER

AND NOW, this           day of                  , 2011      , upon

consideration of the Motion to Dismiss Plaintiffs' First Amended Complaint

on behalf of Defendants Robert and Kathryn Walsh and E.W., a minor, and

Plaintiffs' Response in Opposition thereto, it is hereby ORDERED that the

Motion is DENIED.

BY THE COURT:

_____

SLOMSKY, JOEL, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| BARBARA  and GEORGE PRICE, *on behalf of their daughter* O.P., *a minor, and individually on their own behalf,* )<br>)<br>)<br>) | CIVIL ACTION<br>NO. 3:11-cv-00095-JHS |
| *Plaintiffs,* )<br>)<br>) | (HON. JOEL H. SLOMSKY) |
| v. ) | **ORDER** |
| SCRANTON  SCHOOL  DISTRICT, *et al.,* )<br>)<br>) | **(Jury Trial Demanded)** |
| *Defendants.* )<br>) |  |

## ORDER

AND NOW, this          day of                   , 2011     , upon consideration of the Motion to Dismiss Plaintiffs' First Amended Complaint on behalf of Defendants Jose and Carmen Duverge and I.D., a minor, and Plaintiffs' Response in Opposition thereto, it is hereby ORDERED that the Motion is DENIED.

BY THE COURT:

_____

SLOMSKY, JOEL, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BARBARA  and GEORGE PRICE, *on behalf of their daughter O.P., a minor, and individually on their own behalf,* | ) ) ) ) | CIVIL ACTION NO. 3:11-cv-00095-JHS (HON. JOEL H. SLOMSKY) |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | **ORDER** |
| SCRANTON SCHOOL DISTRICT, *et al.,* | ) ) ) | **(Jury Trial Demanded)** |
| *Defendants.* | ) ) ) | |

## ORDER

AND NOW, this          day of                    , 2011     , upon

consideration of the Motion to Dismiss Plaintiffs' First Amended Complaint

on behalf of Defendants Ronald Evans, Lisa Ogonoski and M.E., a minor,

and Plaintiffs' Response in Opposition thereto, it is hereby ORDERED that

the Motion is DENIED.

BY THE COURT:

_____

SLOMSKY, JOEL, J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| BARBARA and GEORGE PRICE, *on behalf of their daughter O.P., a minor, and individually on their own behalf,* <br><br> *Plaintiffs,* <br><br> v. <br><br> SCRANTON SCHOOL DISTRICT, *et al.,* <br><br> *Defendants.* | ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION <br> ) NO. 3:11-cv-00095-JHS <br> ) (HON. JOEL H. SLOMSKY) <br> ) <br> ) **OMNIBUS RESPONSE IN** <br> ) **OPPOSITION TO DEFENDANTS'** <br> ) **MOTIONS TO DISMISS** <br> ) **PLAINTIFFS' FIRST AMENDED** <br> ) **COMPLAINT** <br> ) <br> ) **(Jury Trial Demanded)** <br> ) |

## OMNIBUS RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

FRANKEL & KERSHENBAUM, LLC

Dated: May 2, 2011

Dave Frankel, Esq. (PA ID 203234)
Joshua M. Kershenbaum, Esq. (PA ID 203270)
FOUR TOWER BRIDGE
200 BARR HARBOR DRIVE, SUITE 400
WEST CONSHOHOCKEN, PA 19428
TEL: (610) 260-6054; FAX: (610) 646-0888
DAVE@DAVEFRANKEL.COM
JOSH@DAVEFRANKEL.COM
**Attorneys for Plaintiffs**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................... i

I. INTRODUCTION................................................................ 1

II. PROCEDURAL HISTORY AND STATEMENT OF FACTS............... 1

    A. Procedural History....................................................... 1

    B. Statement of Facts ...................................................... 2

III. QUESTIONS PRESENTED.................................................. 5

IV. SUMMARY OF ARGUMENT............................................... 6

V. ARGUMENT................................................................... 9

    A. This Court Has Jurisdiction Over All Of The
       Claims Made In The Amended Complaint Because,
       Under The Facts Averred, They Form Part Of The
       Same Case Or Controversy And Share A Common
       Nucleus Of Operative Fact............................................. 9

    B. Defendants' Motions To Dismiss Plaintiffs' Amended
       Complaint Must Be Denied Because, Under The Facts
       Averred And All Reasonable Inferences Drawn Therefrom
       In Favor Of Plaintiffs, Plaintiffs Have Far Exceeded The
       Requirements Under Fed. R. Civ. P. 12(b)(6) To State The
       Claims They Have Made Against Each Defendant.................... 12

        1. Averments Concerning the "Student Defendants"
           Refer To Each And Every One Of The Nine Student
           Defendants....................................................... 14

        2. Count I Of The Amended Complaint States A Claim
           Under Title IX Because, Under The Facts Averred, An
           Appropriate Person With Authority To Take Corrective
           Measures Knew That O.P. Was The Victim Of A

Sexually Hostile Educational Environment And
The District's Response Amounted To Deliberate
Indifference...................................................... 15

3. Count II Of The Amended Complaint States A Claim
For Violations Of Plaintiffs' Substantive Due Process
Rights Under 42 U.S.C. § 1983 And The Fourteenth
Amendment Of The U.S. Constitution Because, Under
The Facts Averred, The Named Defendants Knowingly
Deprived Plaintiffs Of Their Clearly Established Federal
Rights............................................................. 24

4. Count III Of The Amended Complaint States A Claim
For Intentional Infliction Of Emotional Distress Because,
Under The Facts Averred, The Student Defendants,
Defendant Dixon And Defendant Schaeffer Intentionally
Caused O.P. Severe Emotional Distress Through Their
Outrageous Conduct............................................. 29

5. Count IV Of The Amended Complaint States A Claim
For Invasion Of Privacy Because, Under The Facts
Averred, The Student Defendants Publicized Private
Facts About O.P.'s Female Medical Condition And
Portrayed O.P. In A False Light By Characterizing Her
As Dishonest, Disloyal, Racist and Bigoted And
Portraying O.P.'s Parents As Racist And Bigoted.............. 34

6. Count V Of The Amended Complaint States A Claim
For Civil Conspiracy Because, Under The Facts
Averred, The Student Defendants, The Library
Defendants And Defendants Dixon And Schaeffer
Acted In Combination To Intentionally Harm O.P.
And Did Harm Her Through At Least One Unlawful
Act In Pursuance Of The Conspiracy.......................... 37

7. Count VI Of The Amended Complaint States A Claim
For Civil Conspiracy Because, Under The Facts Averred,
The District Defendants Acted In Combination To Harm
O.P. And Did So Through At Least One Unlawful Act In
Pursuance Of The Conspiracy.................................. 40

8. Except For The District Itself, The District Defendants Are Not Entitled To Official Immunity Under Pennsylvania's Political Subdivision Tort Claims Act Because, Under The Facts Averred, They Forfeited Their Official Immunity By Committing An Intentional Tort...................................................................... 41

9. Count VII Of The Amended Complaint States A Claim For Negligence Because, Under The Facts Averred, The Parent Defendants Knew Or Should Have Known About The Tortious Behavior Of Their Children And Failed To Correct Or Restrain Their Children, Making Possible The Harm Their Children Inflicted On O.P...........................44

10. Count VIII Of The Amended Complaint States A Claim For Strict Parental Liability Because, Under The Facts Averred, The Parents Defendants Are Statutorily Strictly Liable For The Harm Their Children Inflicted On O.P........47

11. Plaintiffs State A Claim For Punitive Damages Because, Under The Facts Averred, Defendants Committed Outrageous Acts That Were Willful Or Malicious..............47

VI. CONCLUSION................................................................. 48

# TABLE OF AUTHORITIES

**Cases**

Advanced Medical Inc. v. Arden Medical Systems, Inc., 955 F.2d 188 (3d Cir. 1992)............................................................................................................... 47

Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009).................................................. 12

Bell Atlantic v. Twombly, 550 U.S. 544 (2007)......................................... 12, 13, 49

Bennett v. Pa. Hosp. Sch. of Nurse Anesthesia, No. 01-cv-4098, 2002 WL 32341792 (E.D. Pa. Oct. 29, 2002)................................................... 16, 17

Bowersox v. P.H. Glatfelter Co., 677 F.Supp. 307 (M.D. Pa. 1988) ............... 30, 32

Briar Meadows Dev. Inc. v. South Ctr. Bd. of Supervisors, No. 10-cv-1012, 2010 U.S. Dist. LEXIS 108995 (M.D. Pa. Oct. 13, 2010) .............................................. 37

Condel v. Savo, 39 A.2d 51 (Pa. 1944) ................................................ 44, 45, 46, 47

Chuy v. Phila. Eagles Football Club, 595 F.2d 1265 (3d Cir. 1979).......... 30, 31, 34

Davis v. Monroe Cnty. Bd. of Ed., 526 U.S. 629 (1999) ................................ passim

Delahanty v. First Pennsylvania Bank, N.A., 464 A.2d 1243 (Pa.Super. 1983).... 48

DeShaney v. Winnebago Cnty. Dept. of Soc. Serv., 489 U.S. 189 (1989) ............ 25

Devon IT Inc. v. IBM Corp., No. 10–2899, 2011 WL 1331888 (E.D. Pa. March 31, 2011)........................................................................................................... 12, 13

DiSalvio v. Lower Merion Sch. Dist., 158 F.Supp.2d 553 (E.D. Pa. 2001).... passim

Doe v. Liberatore, 478 F.Supp.2d 742 (M.D. Pa. 2007)......................................... 10

Doe v. Wyoming Valley Health Care System, Inc., 987 A.2d 758 (Pa. Super. 2010)........................................................................................................... 34, 35

i

Forrest v. Owen J. Roberts Sch. Dist., No. 09–3014, 2011 WL 1196410 (E.D. Pa. March 31, 2011) ................................................................................................ 44

Gebser v. Lago Vista Ind. Sch. Dist., 524 U.S. 274 (1998) .................................. 16

Graboff v. The Collern Firm, No. 10-1710, 2010 WL 4456923 (E.D. Pa. Nov. 8, 2010).................................................................................................................. 35

Kazatsky v. King David Mem. Park, Inc., 527 A.2d 988 (Pa. 1987). .................... 29

L.C. v. Cent. Pa. Youth Ballet, No. 1:09-cv-2076, 2010 WL 2650640 (E.D. Pa. July 2, 2010)........................................................................................................ 46

Levin v. Upper Makefield Twp., 90 Fed.Appx. 653 (3d Cir. 2004)........................ 37

Lindsley v. Girard Sch. Dist., 213 F.Supp.2d 523 (W.D. Pa. 2002) ............... 25, 26

Lyon v. Whisman, 45 F.3d 758 (3d Cir. 1995)......................................................... 10

Mary V. v. Pittsburgh Pub. Schs. Frick Mid. Sch., No. CA 9-1982, 2010 WL 562909 (W.D. Pa. Feb. 17, 2010) ................................................................... passim

Munson v. The City of Phila., No. 08-5131, 2009 U.S. Dist. LEXIS 60701 (E.D. Pa. July 15, 2009)................................................................................................ 29

Murphy v. Orloff, No. Civ.A.04-3618,  2004 WL 2861891 (E.D. Pa. Dec. 13. 2004)................................................................................................................... 43

Ocasio v. Lehigh Valley Family Health Ctr., No. 00-cv-3555, 2000 U.S. Dist. LEXIS 16014 (E.D. Pa. Nov. 3, 2000) ............................................................ 30, 32

Pribula v. Wyoming Area Sch. Dist., No. 3:06-CV-2039, 2007 U.S. Dist. LEXIS 51206 (M.D. Pa. 2007).......................................................................................... 43

Rose v. Bartle, 871 F.2d 331 (3d Cir. 1989)............................................................ 37

Sameric Corp. v. City of Phila., 142 F.3d 582 (3d Cir. 1988)................................ 25

Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010) ................................... 12

Smith v. Sch. Dist. of Phila., 112 F.Supp.2d 417 (E.D. Pa. 2000) ......................... 43

Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979) ............. 37, 38

Wagner v. Tuscarora School Dist., No. Civ.A. 1:04-CV-1133, 2005 WL 2319141
(M.D. Pa. Sept. 21, 2005) ......................................................................... 38, 39, 43

Willson v. Yerke, No. 3:10cv1376, 2011 WL 332487 (M.D. Pa. Jan. 31, 2011) .. 35

Wray v. Painter, No. 09–5792, 2011 WL 1226122 (E.D. Pa. March 28, 2011) .... 48

Vicky M. v. Northeastern Educational Intermediate Unit 19, 486 F.Supp.2d 437
(M.D. Pa. 2007)................................................................................................ 41, 42

## Statutes

20 U.S.C. § 1681, et seq. (Title IX) ................................................................. passim

28 U.S.C. § 1367 ................................................................................................ 9, 10

42 U.S.C. § 1983 .............................................................................................. passim

42 Pa.C.S. § 8541, et seq........................................................................................ 42

42 Pa.C.S. § 8550 ............................................................................................. 41, 42

23 Pa.C.S. § 5501, et seq........................................................................................ 5, 8

23 Pa.C.S. § 5502................................................................................................... 47

## Other Authorities

U.S. Const. Amend. 14 ..................................................................................... 5, 9, 40

Restatement (Second) of Torts § 46 comment d. (1965)........................................ 29

Restatement (Second) of Torts § 652D................................................................... 34

**Rules**

Fed. R. Civ. P. 12(b)(1)..........................................................................9, 12

Fed. R. Civ. P. 12(b)(6)....................................................................1, 6, 9, 12

## I.   **INTRODUCTION**

Before this Court are Defendants' Motions to Dismiss Plaintiffs' 78-page, 308-paragraph, 8-Count First Amended Complaint (the "Amended Complaint" or "AC"). Each and every one of the Defendants' Motions to Dismiss must be denied because (1) this Court has original jurisdiction over Plaintiffs' federal claims and supplemental jurisdiction over their state law claims, all of which form part of the same case or controversy and share a common nucleus of operative fact, and (2) Plaintiffs have far exceeded the pleading requirements of Fed. R. Civ. P. 12(b)(6) by alleging in painstaking detail the facts necessary to plausibly state each claim against each Defendant.

## II.   **PROCEDURAL HISTORY AND STATEMENT OF FACTS**

### A.   **Procedural History**

Plaintiffs, Barbara Price ("O.P.'s Mother") and George Price ("O.P.'s Father") (collectively, "O.P.'s Parents"), on behalf of their minor daughter, O.P., and individually on their own behalf (collectively, the "Plaintiffs"), filed their Complaint on January 12, 2011. Pursuant to this Court's February 24, 2011 Order, all Defendants responded by February 28, 2011, either by Answer or Motion to Dismiss. On March 21, 2011, Plaintiffs filed their Amended Complaint and, pursuant to this Court's April 5, 2011 Order, all Defendants responded on April 11,

2011 by filing Motions to Dismiss.  Plaintiffs now submit this Omnibus Response
in Opposition to Defendants' Motions to Dismiss Plaintiffs' Amended Complaint.

### B.   Statement of Facts

As alleged in detail in the Amended Complaint, O.P. was first bullied and
sexually harassed in school in October 2009.  See, e.g., AC ¶¶ 1, 45-46, 52, 55-56,
71, 75.  The bullying and sexual harassment began when O.P. developed a private
female medical condition, specifically a vaginal yeast infection, and included
taunting with offensive sounds and the sexual epithets "bitch," "skank," "slut,"
"tramp" and "whore."  AC ¶¶ 1, 46-74, 80, 96, 119, 125, 131, 135-38, 140-43,
162-64, 217, 220, 223, 226-27, 241, 244-45, 258, 261-63, 270-75, 281-83, 287-90.

O.P. and O.P.'s Parents reported the bullying, the sexual harassment and the
sexually hostile educational environment to at least six District officials.  AC ¶¶
76-81, 105-06, 109-112, 114-15, 118-22, 127-28, 162-67, 171-77, 195-217.  The
District failed to stop the bullying and sexual harassment or eliminate the sexually
hostile educational environment.  In addition, Defendants Mrs. Maloney, Lloyd,
Rossi and Michael, (the "Library Defendants"), Defendants Dixon and Schaffer,
and other District Defendants, conspired to take affirmative, intentional steps to
enable and empower the Student Defendants, thereby causing O.P. and O.P.'s
Parents further harm.  See, e.g., AC ¶¶ 72, 98-102, 107-08, 112-13, 114-15, 117-
122, 123-131, 152-53, 162-68, 170, 172-75, 178-181, 191-92, 197-206, 210-220,

223-24. The District Defendants' unlawful acts were deliberate and calculated, motivated by a desire to protect the other Defendants because of the personal and professional relationships between and among all of the Defendants. See, e.g., AC ¶¶ 82-93, 97-102, 117-122, 162-68, 170, 178-192, 220.

As Plaintiffs have pleaded, since October 2009, O.P. has been the victim of cruel and relentless bullying and sexual harassment. See, e.g., AC ¶ 1. The Defendant bullies conspired to gang up on O.P. and to taunt her about her private female medical condition, specifically a vaginal yeast infection, using it as a weapon and publicizing it to "everyone" – to her classmates, to students from at least one other school – in other words, to O.P.'s community at large. AC ¶¶ 48-67, 135-38. In addition to sexually harassing O.P. about her private female medical condition, the defendant bullies sexually harassed her by frequently hurling sexual epithets at her, including "bitch," "skank," "slut," "tramp" and "whore" and setting out to poison and destroy her remaining friendships by falsely portraying her to the public at large as dishonest, disloyal and racist. AC ¶¶ 68, 70, 73-74, 131, 138, 140-161.

The behavior of the Student Defendants is outrageous because of the number of bullies involved, the organized, willful and malicious nature of their attacks and the fact that they tormented O.P. day and night for **more than one year**. See, e.g., AC ¶¶ 1, 56, 131, 142, 169, 221. As a direct result of this intentional infliction of

emotional distress and the other unlawful behavior, O.P. now suffers from Post Traumatic Stress Disorder ("PTSD"), is being treated by a physician and a therapist for depression, taking a prescription anti-depressant and has, on multiple occasions, considered committing suicide. See, e.g., AC ¶¶ 1, 131, 223, 234, 238, 254, 262, 273, 287, 294, 302.

The parents of the bullies (the "Parent Defendants") knew or should have known about their children's unlawful behavior but negligently failed to correct or restrain their children and their negligence made it possible for their children to harm O.P.  AC ¶¶ 132-33, 139.  The Scranton School District (the "District") and many of its directors, administrators and other employees (the "District Defendants") knew about the bullying, sexual harassment and sexually hostile educational environment, but because of their personal and professional bias against O.P. and O.P.'s Parents and their relationships with the other Defendants, acted with deliberate indifference to O.P.'s suffering and, as a direct result, further damaged O.P. and her Parents, violating her constitutional and federal statutory rights and the constitutional rights and federal statutory rights of O.P.'s Parents in the process. See e.g., AC ¶¶ 1, 64, 72, 81, 82-93, 97-102, 105, 107-08, 112-13, 114-122, 123-131, 152-53, 162-68, 171-75, 178-181, 191-92, 195-220.

## III.   QUESTIONS PRESENTED

A.   Does This Court Have Jurisdiction Over All Of The Claims Pleaded In The Amended Complaint?
   Suggested Answer: Yes.

B.   Do Plaintiffs State A Claim Against The District For A Sexually Hostile Educational Environment Under 20 U.S.C. § 1681 et seq. ("Title IX")?
   Suggested Answer: Yes.

C.   Do Plaintiffs State A Claim Against The District Defendants For A Violation Of Substantive Due Process Under 42 U.S.C. § 1983 And The 14th Amendment To The United States Constitution?
   Suggested Answer: Yes.

D.   Do Plaintiffs State A Claim Against Defendants Dixon, Schaeffer And The Student Defendants For Intentional Infliction Of Emotional Distress?
   Suggested Answer: Yes.

E.   Do Plaintiffs State A Claim Against The Student Defendants For Invasion Of Privacy?
   Suggested Answer: Yes.

F.   Do Plaintiffs State A Claim For Civil Conspiracy Against The Student Defendants And Defendants Dixon, Schaeffer, Mrs. Maloney, Lloyd, Rossi and Michael?
   Suggested Answer: Yes.

G.   Do Plaintiffs State A Claim For Civil Conspiracy Against The District Defendants?
   Suggested Answer: Yes.

H.   Do Plaintiffs State A Claim For Negligence Against The Parent Defendants?
   Suggested Answer: Yes.

I.   Do Plaintiffs State A Claim For Strict Parental Liability Against The Parent Defendants Pursuant to 23 Pa. Cons. Stat. § 5501, et seq.?

Suggested Answer: Yes.

J.     Are Plaintiffs Entitled To Punitive Damages?
       Suggested Answer: Yes.

## IV.     **SUMMARY OF ARGUMENT**

This Court must deny all Defendants' Motions to Dismiss because, under

Fed. R. Civ. P. 12(b)(6), Plaintiffs' 78-page, 308-paragraph, 8-count Amended

Complaint far exceeds the pleading requirements to sufficiently state each claim

against each Defendant.  Each of the thirty-eight Defendants argues that they have

no legal liability for the bullying, sexual harassment and sexually hostile

educational environment that transformed a healthy, happy and popular young girl

into a traumatized, depressed and suicidal victim of cruel and relentless attacks

specifically designed to harm her.  When taken as true, the facts pleaded in the

Amended Complaint, along with all reasonable inferences that can be drawn

therefrom in favor of Plaintiffs, sufficiently allege an ordeal of unlawful bullying

and sexual harassment – a sexually hostile educational environment that amounted

to far more than "cattiness" (as the Kelly Defendants describe it), and cannot be

minimized, as these same Defendants attempt to do, by describing it as "little more

than early teenage girls acting like early teenage girls . . ." or justified by blaming

the victim for doing something "other students found to be gross . . . ."  Kelly Brief

at 9.  Five other Defendant families attempt to understate the cruel and relentless

attacks described in the Amended Complaint as being merely "unpleasant" or "of

an unpleasant nature." Rasalla Brief at 6, Creegan Brief at 3, Walsh Brief at 5, Evans/Ogonoski Brief at 4, Petrucci Brief at 4. In fact, as Plaintiffs have pleaded, each of the 38 distinct Defendants – the Student Defendants, the District Defendants and the Parent Defendants – played an active and unlawful role in the outrageous attacks on O.P., attacks that went on for more than a year.

As the specific averments in the Amended Complaint show, the Defendants engaged in a deliberate, concerted and uncommonly cruel effort that played out day after day, week after week, month after month and that, on multiple occasions, caused O.P. to consider committing suicide. The allegations in the Amended Complaint describe in detail how the Student Defendants conspired to intentionally inflict emotional distress on O.P., to portray her publicly in a false light and to publicize embarrassing and humiliating private facts about her female medical condition, a vaginal yeast infection. The Amended Complaint chronicles how the Student Defendants tormented and traumatized O.P. through direct bullying and sexual harassment and indirectly by methodically setting about to isolate her socially by destroying her reputation for integrity, honesty and loyalty among her remaining friends. The Amended Complaint also explains that Defendants created a sexually hostile educational environment and caused O.P. severe emotional distress, depression, suicidal ideation and PTSD. Defendants Dixon and Schaeffer compounded to O.P.'s suffering by conspiring to act as adult bullies, deliberately

pulling O.P. out of class without consulting or even notifying O.P.'s Parents and, without further explanation, blithely telling this already victimized 13-year-old child that she needed psychological help.  Driving a child to contemplate taking her own life is the very definition of outrageous behavior.  Thus, Plaintiffs' well-pleaded allegations of intentional infliction of emotional distress cannot be dismissed as a matter of law.

The Amended Complaint also alleges that each School District Defendant knew about the bullying, sexual harassment and the sexually hostile educational environment and that each of them not only failed to stop it, but also actively participated in it.  Thus, the well-pleaded facts in the Amended Complaint, along with the reasonable inferences that can be drawn therefrom in favor of Plaintiffs, state claims against the District Defendants under Title IX and §1983, and – in the case of several of the District Defendants – civil conspiracy and intentional infliction of emotional distress.

The Amended Complaint also sufficiently alleges that the negligence of the Parent Defendants, including their failure to correct or restrain their children, made it possible for their children to bully, sexually harass and otherwise harm O.P.  The Parent Defendants are also strictly liable for their children's tortious conduct under Pennsylvania's parental strict liability statute, 23 Pa.C.S. § 5501, et seq.

Accordingly, under the facts pleaded, dismissal of Plaintiffs' claims against the Parent Defendants would be inappropriate at this time.

Based on the allegations set forth in Plaintiffs' Amended Complaint, all of which must be taken as true, and all reasonable inferences taken therefrom, which also must be drawn in Plaintiffs' favor, Plaintiffs have alleged far more than necessary to properly state their claims against all Defendants. Therefore, the Motions to Dismiss under Fed. R. Civ. P. 12(b)(6) all must be denied. Defendants' Motions to Dismiss must also be denied under Fed. R. Civ. P. 12(b)(1), because the facts giving rise to Plaintiffs' federal claims form part of the same case or controversy and share a common nucleus of operative fact with those giving rise to Plaintiffs' claims under state law.

## V.   ARGUMENT

### A.   This Court Has Jurisdiction Over All Of The Claims Made In The Amended Complaint Because, Under The Facts Averred, They Form Part Of The Same Case Or Controversy And Share A Common Nucleus Of Operative Fact.

This Court has subject matter jurisdiction over all of the Plaintiffs' claims against all of the Defendants. Plaintiffs aver (and no Defendant disputes) that this Court has subject matter jurisdiction over Plaintiffs' federal claims, which were brought under Title IX, 42 U.S.C. § 1983 and the 14th Amendment to the United States Constitution. Plaintiffs aver that this Court also has supplemental jurisdiction under 28 U.S.C. § 1367 because the state law claims are so related to

9

the claims within the Court's original jurisdiction that they form part of the same case or controversy and share a common nucleus of operative fact. AC ¶ 3.

Under 28 U.S.C. § 1367(a), "the district court shall have supplemental jurisdiction over all of the claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ." Doe v. Liberatore, 478 F.Supp.2d 742, 757 (M.D. Pa. 2007). Supplemental jurisdiction is proper over Plaintiffs' state law claims "so long as these claims share a common nucleus of operative fact with [Plaintiffs'] federal law claim[s] . . . such that [Plaintiffs'] would ordinarily be expected to try them all in one judicial proceeding." Id. (citations and quotations omitted). "When the same acts violate parallel federal and state laws, the common nucleus of operative facts is obvious." Lyon v. Whisman, 45 F.3d 758, 761 (3d Cir. 1995).

Here, all of the claims form part of the same case or controversy and share a common nucleus of operative fact because the specific allegations and claims in the Amended Complaint, both federal and state, arise from an inextricably intertwined set of facts and circumstances concerning the bullying and sexual harassment of O.P. by her school classmates and the District and Parent Defendants' responses to that unlawful behavior.

In their Amended Complaint, Plaintiffs allege, inter alia, that the District Defendants, the Student Defendants and the Parent Defendants harmed O.P. and

O.P.'s Parents in school, in other District settings and out of school.  For example,

Plaintiffs allege that the state law tort of intentional infliction of emotional distress

began with sexual harassment and bullying in O.P.'s seventh grade reading class

and persisted for more than one year, giving rise to the circumstances that form the

basis of Plaintiffs' Title IX and § 1983 claims and their state law conspiracy

claims.  AC ¶¶ 52, 226-34, 236-56, 258-63, 277-90, 292-97.  Plaintiffs also allege

that, on multiple occasions, they met with various District Defendants, whose

responses to the tortious behavior of the Student Defendants under Pennsylvania

law violated federal law under Title IX and § 1983.  See e.g., AC ¶¶ 77-81, 114-

122, 162-68, 172, 197-206, 212-220.  In addition, Plaintiffs have alleged that many

of the Parent Defendants, liable for negligence under Pennsylvania law, were given

actual notice of their children's tortious behavior by some of the District

Defendants, whose response is simultaneously central to Plaintiffs' federal claims.

AC ¶¶ 132-33.  Finally, the behavior of the Library Defendants, which Plaintiffs

allege violated Pennsylvania law, also forms part of the basis for Plaintiffs' federal

law claims.  AC ¶¶ 98-102.

In short, the facts and circumstances that form the basis of Plaintiffs' federal

law claims overlap almost entirely with those that form the basis of the state law

claims.   Adjudicating the state and federal claims will involve the same parties,

the same witnesses, the same damages, the same facts and the same evidence, all of

which clearly demonstrates not only that Plaintiffs "would ordinarily be expected to try [both the state and federal claims] all in one judicial proceeding," but also that it would be entirely duplicative for them to do otherwise. Accordingly, this Court has original jurisdiction over Plaintiffs' federal claims, and supplemental jurisdiction over all of Plaintiffs' state law claims and all of Defendants' Motions to Dismiss under Fed. R. Civ. P. 12(b)(1) must be dismissed.

> **B.** **Defendants' Motions To Dismiss Plaintiffs' Amended Complaint Must Be Denied Because, Under The Facts Averred And All Reasonable Inferences Drawn Therefrom In Favor Of Plaintiffs, Plaintiffs Have Far Exceeded The Requirements Under Fed. R. Civ. P. 12(b)(6) To State The Claims They Have Made Against Each Defendant.**

The Third Circuit has established a three-part analysis for motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).

> First, the court must tak[e] note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Devon IT Inc. v. IBM Corp., No. 10–2899, 2011 WL 1331888, at *5 (E.D. Pa. March 31, 2011) (quoting Santiago v. Warminster Twp., 629 F.3d 121 (3d Cir. 2010)). This test reflects the recent Supreme Court decisions regarding the standard for motions to dismiss under Fed. R. Civ. P. 12(b)(6). See Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009) and Bell Atlantic v. Twombly, 550 U.S. 544 (2007).

Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Devon IT Inc. at *5 (citation omitted). In applying this three-part analysis, "all factual allegations, and all reasonable inferences therefrom, must be accepted as true and viewed in a light most favorable to the plaintiff." Mary V. v. Pittsburgh Pub. Schs. Frick Mid. Sch., No. CA 9-1982, 2010 WL 562909, at *1 (W.D. Pa. Feb. 17, 2010).

In Twombly, the Supreme Court refused to require heightened fact pleading, instead holding that a complaint will survive a motion to dismiss if the plaintiffs have "nudged their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. As the Court explained in Twombly:

> Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.

Id. (internal quotation omitted)

Here, Plaintiffs have far exceeded their burden to survive Defendants' Motions to Dismiss. The Amended Complaint is replete with specific, factual

allegations to support each claim against each Defendant, claims that are more than plausible on their face.

### 1. Averments Concerning The "Student Defendants" Refer To Each And Every One Of The Nine Student Defendants.

Several Student Defendants seek dismissal of the claims against them based on the false premise that they were not individually named in the Amended Complaint. One Student Defendant protests that Plaintiffs never alleged that she "engaged in any unlawful conduct at all . . . ." Petrucci Brief at 7. Another insists that "none of the identifiable statements giving rise to plaintiffs' claims of false light and to publication of private facts have been attributed to [her]." Creegan Brief at 7. These Defendants, along with the others who make similar arguments, have either badly misread the Amended Complaint or are deliberately choosing to ignore the specific factual allegations set forth plainly therein.

In fact, Plaintiffs identified each and every Student Defendant individually in the fact section of the Amended Complaint and, as Plaintiffs expressly stated: "[w]herever the term "Student Defendants" is used in this Amended Complaint, it refers to **each and every one** of the Student Defendants." AC ¶ 33 (emphasis in original). Plaintiffs could not have made this point any more plainly:[1] Averments

---

[1] Despite their protests about being lumped together in the Amended Complaint, six of the nine Student Defendants nevertheless seem to speak in a single voice in their briefs to this Court. This Court will notice that multiple passages in these
(…continued)

made against the "Student Defendants" are made against all nine Student Defendants. Not including the paragraph in which the term is originally defined, the term Student Defendants appears in more than three dozen paragraphs in the Amended Complaint and the Student Defendants are referred to in other ways in still more paragraphs. See, e.g., AC ¶¶ 260-63, 289-290.

Therefore, when evaluating whether Plaintiffs have pleaded the facts necessary to state claims against each of the Student Defendants, this Court must accept each of the averments made against the "Student Defendants" as true for each and every one of these Defendants.[2]

> **2.   Count I Of The Amended Complaint States A Claim Under Title IX Because, Under The Facts Averred, An Appropriate Person With Authority To Take Corrective Measures Knew That O.P. Was The Victim Of A Sexually Hostile Educational Environment And The District's Response Amounted To Deliberate Indifference.**

To state a claim under Title IX, a plaintiff must aver that she was exposed to "1) . . . a sexually hostile educational environment; 2) that she provided actual notice to 'an appropriate person' who had authority to take corrective measures;

---

(continued...)
briefs are written using identical language. Compare, Briefs of Rasalla, Walsh, Creegan, Evans/Ogonoski, Duverge and Petrucci Defendants.

[2] The same is true for the collective terms "Parent Defendants" and "District Defendants," which are defined in ¶¶ 44 and 22, respectively, and which none of the Defendants failed to understand.

and 3) that the institution's response to the harassment amounted to deliberate indifference." Bennett v. Pa. Hosp. Sch. of Nurse Anesthesia, No. 01-cv-4098, 2002 WL 32341792 (E.D. Pa. Oct. 29, 2002), at *3 (E.D. Pa. Oct. 29, 2002) (quoting Gebser v. Lago Vista Ind. Sch. Dist., 524 U.S. 274, 291-92 (1998)). Deliberate indifference exists "where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Davis v. Monroe Cnty. Bd. of Ed., 526 U.S. 629, 648 (1999). As the Court explained in Davis, "whatever else [Title IX] prohibits, students must not be denied access to educational benefits and opportunities on the basis of gender." Id. at 650.

In Davis, a fifth grade student alleged that she was the victim of sexual harassment by another student. The trial court dismissed her complaint and the Court of Appeals for the Eleventh Circuit affirmed. The Supreme Court reversed, holding that granting the motion to dismiss was improper because the complaint alleged "repeated acts of sexual harassment [] over a 5-month period" and because the victim "may be able to show both actual knowledge and deliberate indifference on the part of the [school] Board . . . ." Davis, 526 U.S. at 653-54.

Here, the allegations that Plaintiffs have made against the District in their Amended Complaint are even more compelling than those the Supreme Court deemed sufficient to state a claim in Davis. Accordingly, dismissal of the Title IX claim would be improper here just as the Supreme Court held that it was in Davis.

16

### a. O.P Suffered A Sexually Hostile Educational Environment In School.

To state a claim for a sexually hostile educational environment, a plaintiff must aver that "she suffered intentional discrimination because of her sex, the discrimination was pervasive and regular, the discrimination detrimentally affected her, and the discrimination would have detrimentally affected a reasonable person of her sex in her position." Bennett, No. 01-cv-4098, 2002 WL 32341792, at *3. In addition, the harassment must cause the victim to be "effectively denied equal access to an institution's resources and opportunities." Davis, 526 U.S. at 651.

### i.   O.P. Suffered Intentional Discrimination Because Of Her Sex.

The Amended Complaint alleges that O.P. suffered intentional discrimination because of her sex. Allegations in a Complaint averring peer-on-peer harassment based on the victim's sexual body parts have been held in this Circuit to sufficiently state a claim for "sex-based discrimination" for the purposes of surviving a motion to dismiss. See Mary V., 2010 WL 562909, at *2 (finding "[a]mended Complaint sets forth facts sufficient to state a [Title IX] claim grounded in sex based harassment" where the harassment was alleged to be "related to [the plaintiff's] developing adult female figure.") In Mary V., the court specifically ruled that an allegation of this type "explicitly implicates the minor Plaintiff's gender." Id.

Here, Plaintiffs aver that Defendants K.K., T.M., J.P, A.R., B.C., A.H. and M.E. began their attacks on O.P. because she suffered from a female medical condition, specifically, a vaginal yeast infection. AC ¶¶ 46-67. These Defendants created a noise designed to mimic the sound (the "Scratching Sound") made by O.P. when she scratched her vaginal area, and then developed a variant on the Scratching Sound, "Zhu Zhu," and used that as another weapon to sexually harass O.P. Id. The Student Defendants also subjected O.P. to a barrage of overtly sexually derogatory and offensive epithets, including "bitch," "skank," "slut," "tramp" and "whore." AC ¶ 68. None of the Student Defendants ever directed any of these sexual epithets at a boy. AC ¶ 69.

Accordingly, when taken as true, the facts averred in the Amended Complaint plausibly aver that O.P. suffered "intentional discrimination based on sex" for the purposes of her claims under Title IX.

### ii. The Discrimination Was Severe, Pervasive And Objectively Offensive.

Discrimination has been held to be severe, pervasive and objectively offensive where a middle school student "was subject to offensive and teasing comments by a group of three to five boys 'on a daily basis'" during two school years. Mary V., 2010 WL 562909, at *3. Here, Plaintiffs have alleged that O.P. was bullied by **nine** girls, both day and night, in and out of school, in person and online over a period of two school years. Specifically, Plaintiffs allege that the

discrimination began in school "in or around October 2009 . . . ." AC ¶¶ 48-52. Plaintiffs allege that O.P. was unlawfully bullied and sexually harassed "both in and out of school." AC ¶ 55. Plaintiffs allege that O.P. was taunted "every day at school, multiple times a day, a pattern O.P. describes as 'a way of life' for her." AC ¶ 56. Plaintiffs allege that the attacks on O.P. continued through the summer of 2010 and into the 2010-2011 school year. AC ¶¶ 135-142.

Thus, the allegations set forth in the Amended Complaint, when taken as true, plausibly describe harassment that was "severe, pervasive and objectively offensive" for the purposes of Plaintiffs' claims under Title IX.

### iii.    The Discrimination Detrimentally Affected O.P.

Under Davis, discriminatory acts detrimentally affect a plaintiff when those acts deny the plaintiff "access to educational benefits and opportunities on the basis of gender." Davis, 526 U.S. at 650. The Supreme Court found that the discrimination in Davis detrimentally affected the plaintiff because her "previously high grades allegedly dropped as she became unable to concentrate on her studies and . . . her father discovered that she had written a suicide note." Id. at 634 (citation omitted). In Mary V., the court denied the motion to dismiss where the plaintiff was "alleged to have developed severe distress and anorexia nervosa as a result of the harassment, and was forced into alternate schooling." Mary V., 2010 WL 562909, at *1. Another court denied the defendant's motion to dismiss where

the plaintiff "was embarrassed and afraid to return to school, eventually left school and finally relapsed into bulimia . . . ." DiSalvio, 158 F.Supp.2d 553, 556 (E.D. Pa. 2001).

Here, the discrimination detrimentally affected O.P. because it transformed her from a healthy, happy and popular young girl into a young girl suffering from Post Traumatic Stress Disorder ("PTSD"), a traumatized, depressed and suicidal victim of cruel and relentless attacks specifically designed to harm her. See, e.g., AC ¶ 232. As averred throughout the Amended Complaint, and as discussed below, Plaintiffs aver that O.P. was subjected to sexual harassment that was so severe, pervasive and objectively offensive that it effectively barred her access to an educational opportunity or benefit. See, e.g., AC ¶¶ 1, 56, 62-63, 70-72, 227. Specifically, as a direct result of the sexual harassment, O.P. avers that she will be withdrawing from the Scranton District at the end of the 2010-2011 school year and enrolling in private school, where O.P.'s Parents will be forced to pay tuition. See, e.g., AC ¶ 234. In addition, as a direct result of the sexual harassment, O.P. frequently left class to avoid the harassment and seek refuge in the girls' restroom, missing classroom instruction. AC ¶ 63. O.P. was also forced to withdraw from her position on the school yearbook because of the sexually hostile educational environment created by some of the Student Defendants who participated on the yearbook. See, e.g., AC ¶ 234. Moreover, O.P. alleges that she was denied access

to an educational opportunity or benefit because the sexual harassment left her socially isolated, denying her access to one of the most important educational opportunities or benefits for a child, the simple ability to interact in her school community in a learning environment made safe by the District. AC ¶¶ 140-161.

### iv. The Discrimination Would Have Detrimentally Affected A Reasonable Person In O.P.'s Position.

In <u>Davis</u>, the Supreme Court held that "[w]hether gender-oriented conduct rises to the level of actionable harassment thus depends on a constellation of surrounding circumstances, expectations, and relationships including, but not limited to, the ages of the harasser and the victim and the number of individuals involved." <u>Davis</u>, 526 U.S. at 651-52 (internal quotations and citations omitted). In <u>Davis</u>, the Supreme Court ruled in favor of the plaintiff, a fifth grade student who alleged that she was the victim of sexual harassment by one other student over a period of five months. <u>Id.</u> at 634. Similarly, in <u>Mary V.</u>, the court denied Defendants' motion to dismiss where the plaintiff alleged that she was teased on a daily basis by "three to five boys." <u>Mary V.</u>, 2010 WL 562909 at *3.

Here, Plaintiffs allege that **nine** of O.P.'s classmates and at least **six adult** teachers, administrators and other school employees ganged up on her in various ways and at various times, day and night, over a period of two school years. <u>See, e.g.</u>, AC ¶¶ 49, 51, 55-56, 60, 65-68, 70, 97-102, 123-130. The discrimination to which O.P. alleges she was subjected would have detrimentally affected a

21

reasonable person in her position because she is a teenager whose very identity and self worth are largely defined by the children around her, the peer groups that choose to include or exclude her, her body image and developing sexual awareness and her reputation as a person worthy of the friendship of her classmates, all of which were attacked and damaged by the Student Defendants.  Furthermore, the affirmatively harmful acts of Defendants Dixon, Schaeffer and the Library Defendants would also detrimentally affect a reasonable person in O.P.'s position because these Defendants, in addition to their own unlawful acts, empowered and enabled the Student Defendants to continue and escalate their attacks.

In short, when taken as true, and when compared to the facts averred in Davis and Mary V., Plaintiffs' Amended Complaint states a plausible claim that the discrimination O.P. suffered would have detrimentally affected a reasonable person in her position.

### b. The District Defendants Had Actual Notice Of The Sexually Hostile Educational Environment.

Plaintiffs have adequately pleaded that the District Defendants had the legally requisite notice of sexual harassment for the purposes of surviving a motion to dismiss.  Notice has been held to have been sufficiently pleaded where the complaint averred that "a teacher sent the minor Plaintiff and the perpetrators to a school guidance counselor . . . and the harassment was open and apparent."  Mary V., 2010 WL 562909, at *2.  A school district also has actual notice of sexual

harassment where the plaintiff "alleges that [] she repeatedly informed various [school] employees" about the harassment. DiSalvio, 158 F. Supp. 2d at 556.

Here, Plaintiffs have alleged that at least four District Defendants – Lesh, Sheridan, King and Dixon – had actual notice of the sexually hostile educational environment and were appropriate people with the authority to take corrective measures whose response amounted to deliberate indifference. AC ¶¶ 10-20, 77-81, 94-96, 105, 109, 114-116, 118-122, 125, 132-33, 152-53, 162-69, 171-73, 181, 195-206, 207-17. As described in the Amended Complaint, at various times and in various combinations beginning on April 9, 2010, O.P. and O.P.'s Parents provided Defendants Lesh, Sheridan, King, Dixon, Rogan, Rose and Schaeffer with actual notice by telling each of them directly about the sexually hostile educational environment. Id. In addition, Defendants Mrs. Maloney, Lloyd, Rossi and Michael are also alleged to have known about the sexually hostile educational environment. AC ¶¶ 97-102.

### c. The District Defendants' Response Amounted To Deliberate Indifference.

Deliberate indifference exists "where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." Davis, 526 U.S. at 648. In Davis, the Court found deliberate indifference where the facts as pleaded gave rise to a plausible inference that the school board "made no effort whatsoever either to investigate or to put an end to

the harassment." Id. at 654.  To establish deliberate indifference at the pleading stage, Plaintiff must simply allege that "overall, [] the School District's response to the harassment was inadequate." Mary V., 2010 WL 562909, at *2.

Here, Plaintiffs have averred in detail how the District's response to the sexually hostile educational environment was inadequate and clearly unreasonable under the circumstances.  When taken as true, the facts in the Amended Complaint aver that the School District, motivated by the relationships among the Defendants and personal and professional interests, unlawfully chose to protect its own interest and the interests of its employees over the interests of O.P. and O.P.'s Parents. See, e.g., AC ¶¶ 82-93.  As a direct result of making this cynical choice, Plaintiffs allege, the bullying, sexual harassment and sexually hostile educational environment continued long after the District could have and should have stopped it.  See, e.g., AC ¶¶ 107-08, 115-17, 120, 122, 130-31, 152-53, 158, 163, 164-69, 170-192.  Therefore, Plaintiffs have sufficiently pleaded all of the necessary elements to state a claim under Title IX.

> **3.  Count II Of The Amended Complaint States A Claim For Violations Of Plaintiffs Substantive Due Process Rights Under 42 U.S.C. § 1983 And The Fourteenth Amendment Of The U.S. Constitution Because, Under The Facts Averred, The Named Defendants Knowingly Deprived Plaintiffs Of Their Clearly Established Federal Rights.**

To state a claim under 42 U.S.C. § 1983 for a violation of her due process rights, a plaintiff must plead that the "conduct complained of was committed by a

person acting under color of state law" and that the conduct "deprived the complainant of rights secured under the Constitution or federal law." <u>Sameric Corp. v. City of Phila.</u>, 142 F.3d 582, 590 (3d Cir. 1988).

     **a.**    **The District Defendants Are Liable In Their Individual Capacities Because, Under The Facts Alleged, They Individually Participated In Or Approved Of Depriving Plaintiffs Of Rights Secured Under The Constitution Or Federal Law, And They Are Not Entitled To Qualified Immunity.**

     **(1)**    **The District Defendants Are Liable In Their Individual Capacities.**

The District Defendants argue that "absent a special relationship between a state and an individual in which the state affirmatively restrains the individual's liberty, such as the state's relationship to a prisoner, the Due Process Clause does not obligate states to protect individuals from acts of private violence." District Brief at 7 (citing <u>DeShaney v. Winnebago Cnty. Dept. of Soc. Serv.</u>, 489 U.S. 189 (1989)). The District Defendants also rely on <u>Lindsley v. Girard Sch. Dist.</u>, 213 F.Supp.2d 523 (W.D. Pa. 2002), to argue "even if we assume that the students' conduct of which Plaintiff complains and which took place on school premises was sufficiently severe to infringe Plaintiff's liberty interest for purposes of due process analysis . . . the Defendants' failure to protect her from that conduct is not constitutionally actionable." District Brief at 7 (quoting <u>Lindsley</u>, 213 F.Supp.2d at 529).

By quoting Lindsley, the District Defendants mischaracterize Plaintiffs' Amended Complaint as alleging only a "failure to protect" O.P. from the conduct of the Student Defendants. In fact, Plaintiffs allege far more. Plaintiffs allege in great detail, that the District Defendants acted affirmatively and on their own, under color of state law, to harm O.P. and to deny O.P. of her clearly established federal statutory rights and constitutionally protected liberty interest in bodily integrity, specifically, the right to be free from the abuse and injuries described in Plaintiffs' Amended Complaint. AC ¶¶ 1, 81-83, 98-102, 107-112, 114-131, 152-53, 162-68, 170, 172-75, 178-181, 191-92, 197-206, 220, 223, 233, 230, 237-38, 240-41, 243-44, 248-251, 256, 259-263, 277-280, 284-290, 292-97. Plaintiffs also allege that these same Defendants acted affirmatively and on their own, under color of state law, to harm O.P.'s Parents and to deny them of their clearly established and constitutionally protected liberty interest in exercising care, custody and control of their child, specifically, the right to be free from the effects of the abuse and injuries that O.P. suffered as described in Plaintiffs' Amended Complaint. Id.

Plaintiffs allege that the District Defendants "allowed their personal and professional interests to interfere with their handling of the bullying and harassment," that they chose "to protect their own interests and the interests of the other Defendants at the expense of O.P." and that they "chose to protect the

Student Defendants rather than protect O.P., thereby failing repeatedly to meet their legal obligation . . . ." AC ¶¶ 82-83, 170. Among the specific allegations in their Amended Complaint, Plaintiffs allege that the Library Defendants met in the school library and conspired "to harm O.P. by interfering with and undermining the investigation" into the bullying and sexual harassment.   AC ¶¶ 97-102. Plaintiffs also alleged that Defendants Dixon and Schaeffer each took affirmative steps to harm O.P. by having Defendant Schaeffer pull O.P. out of class, tell her she needed to seek psychological help and, without further explanation or discussion, immediately send her back to class, all without the knowledge, participation or consent of O.P.'s Parents. AC ¶¶ 123-29. Plaintiffs have alleged that Defendant King "took an affirmative step to minimize the crisis and decrease the likelihood of stopping the bullying and harassment when he subsequently told [Defendant] Dixon that she should handle the matter 'at the building level.'" AC ¶ 122.   Plaintiffs alleged that the District Defendants further harmed them by affirmatively sabotaging a proposed mediation process by refusing to participate, falsely accusing Plaintiffs of refusing to participate, selecting an unqualified mediator and deliberately choosing to provide the mediator with incomplete information about the scope of the bullying and sexual harassment. AC ¶¶ 176-92. Finally, Plaintiffs alleged that Defendants Lesh and Sheridan affirmatively chose to

ignore Plaintiffs' repeated requests to intervene and protect O.P. AC ¶¶ 195-220, 230, 233, 237-38, 240-41, 243, 248-51.

These examples demonstrate that Plaintiffs have not simply pleaded a "failure to protect" the rights of O.P. and O.P.'s Parents. Instead, Plaintiffs allege that the District Defendants were active and affirmative participants in the denial of Plaintiffs' federal statutory and constitutional rights.

### (2)    The District Defendants Are Not Entitled To Qualified Immunity Under § 1983.

While "public officials generally enjoy qualified immunity for their actions" in a § 1983 action, they forfeit that immunity when their actions "violate clearly established constitutional rights of which a reasonable person would know." DiSalvio, 158 F. Supp. 2d at 557. Furthermore, public officials "bear[] the burden of establishing that [they] enjoy[] qualified immunity." Id. In DiSalvio, the defendant teacher failed to meet that burden because, under the facts averred in the complaint, he sexually harassed a student and the court found that "[a]ny reasonable person would have known that acting in the alleged manner would violate [the plaintiff's] well established right to bodily integrity." Id.

Here, the District Defendants have failed to meet their burden to establish qualified immunity because, under the facts averred in the Amended Complaint, it is reasonable to infer that they reasonably would have known that their actions violated Plaintiffs' rights. It is certainly plausible to infer that teachers and school

administrators who were, for their own personal and professional benefit, actively and intentionally enabling the ongoing sexual harassment of a student knew that such actions clearly violated Plaintiffs' rights.

Accordingly, at this stage in the proceedings, this Court should deny the District Defendants' claims for qualified immunity under § 1983.

>    **4.    Count III Of The Amended Complaint States A Claim For Intentional Infliction Of Emotional Distress Because, Under The Facts Averred, The Student Defendants, Defendant Dixon And Defendant Schaeffer Intentionally Caused O.P. Severe Emotional Distress Through Their Outrageous And Unlawful Conduct.**

To state a claim for intentional infliction of emotional distress, Plaintiffs must aver "that the defendant, by extreme and outrageous conduct, intentionally or recklessly caused the plaintiff severe emotional distress." Munson v. The City of Phila., No. 08-5131, 2009 U.S. Dist. LEXIS 60701, at *14. (E.D. Pa. July 15, 2009). Under Pennsylvania law, "the gravamen of the tort of intentional infliction of emotional distress is outrageous conduct on the part of the tortfeasor." Kazatsky v. King David Mem. Park, Inc., 527 A.2d 988, 991 (Pa. 1987). In determining whether particular facts state a claim for this tort, Pennsylvania courts ask whether the conduct alleged could plausibly be viewed as "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts, § 46 comment d. (1965).

Courts in this Circuit have refused to dismiss claims for intentional infliction of emotional distress on motions to dismiss in cases similar to the one before this Court.   In Ocasio v. Lehigh Valley Family Health Ctr., the court denied the defendant's motion to dismiss plaintiff's IIED claim where the plaintiff alleged that the defendant racially and sexually harassed her at work and retaliated against her for reporting the discrimination.   No. 00-cv-3555, 2000 U.S. Dist. LEXIS 16014, at *10-11 (E.D. Pa. Nov. 3, 2000).  Plaintiff alleged that this discriminatory conduct caused her to seek counseling and adjust her work schedule to avoid contact with certain employees, but that she was not discharged from her job either outright or constructively and continued to work there despite the harassment.  Id. There, the court determined that the facts plead "may be sufficient to meet the standards of an IIED claim and therefore believes a decision on the survival of this claim is better suited for summary judgment." Id. at *11.  See also Bowersox v. P.H. Glatfelter Co., 677 F.Supp. 307 (M.D. Pa. 1988) (denying motion to dismiss IIED claim where plaintiff averred that defendant sexually harassed her at work and retaliated against her by impeding her ability to do her job and isolating her from her coworkers);  DiSalvio, 158 F.Supp.2d at 561 (motion to dismiss IIED claim denied where plaintiff alleged that teacher sexually harassed her and where, "in light of the parties' age and relative power," defendant "would have known that to act in such a way would be to incur liability and resentment.");  Chuy v. Phila.

Eagles Football Club, 595 F.2d 1265 (3d Cir. 1979) (physician's false statement to the press that plaintiff was suffering from a potentially fatal disease "went beyond the mere insults, indignities . . . or annoyances which people are prepared to withstand" and could therefore be properly deemed as outrageous for the purposes of IIED claim). Id. at 1274-75. (quotations omitted).

Here, Plaintiffs have averred that the Student Defendants subjected O.P. to cruel and relentless attacks that lasted more than one year and caused her to suffer from PTSD, to begin taking prescription medication for depression and to consider committing suicide on several occasions. AC ¶ 1, 131, 223, 234, 238, 254, 262, 273, 287, 294, 302. Plaintiffs have alleged that the bullying and sexual harassment began when O.P. developed a private female medical condition, specifically a vaginal yeast infection, and immediately became the target for the bullies. AC ¶¶ 46-56. Plaintiffs have alleged that in a cold and calculated act designed to maximize the harm to O.P., Defendants K.K., T.M., J.P., A.R., B.C, A.H., and M.E. publicized the private fact of O.P.'s vaginal yeast infection to "everybody." AC ¶¶ 60-63. Plaintiffs have also alleged that the Student Defendants bombarded O.P. with a cruel and relentless barrage of sexual epithets, such as "bitch," "whore," "skank," "tramp," and "slut," again designed to maximize the harm they inflicted on O.P. See, e.g., AC ¶¶ 68, 70-72. Plaintiffs have alleged that Defendants K.K., T.M., J.P., A.R., B.C, A.H., and M.E. continued and escalated

psychiatric care, and severely interfered with her everyday life. Indeed, Plaintiffs further alleged that this abuse was so intolerable that it caused O.P. to suffer PTSD and to contemplate taking her own life on more than one occasion. And as in DiSalvio, the facts as averred demonstrate that the harassment, bullying and degradation were inflicted in the context of a severe power imbalance. Although the Student Defendants and Plaintiff are all teenagers, the fact that anywhere from seven to nine Student Defendants, encouraged and supported by at least six adult Defendants, engaged in this harassment all at once for over a year created a power imbalance that, in light of O.P.'s age, was indecent, intolerable and outrageous.

Plaintiffs have alleged that Defendants Dixon and Schaeffer each took affirmative steps to harm O.P. by having Defendant Schaeffer pull her out of class, tell her she needed to seek psychological help and, without further explanation or discussion, immediately send her back to class, all without the knowledge, participation or consent of O.P.'s Parents. AC ¶¶ 123-29. Once again, Plaintiffs allege that this was an outrageous thing to do to a 13-year-old girl who Defendants Dixon and Schaeffer knew was being victimized by the Student Defendants, especially without even notifying O.P.'s Parents. Id. From this allegation, and from the fact that neither Defendant Dixon nor Defendant Schaeffer ever told O.P. or O.P.'s Parents why they thought she needed psychological counseling or why they felt it necessary to pull her out of class without her parents' knowledge or

consent, this Court can draw the reasonable inference that Defendants Dixon and Schaeffer intended to harm and not to help O.P.  As in DiSalvio and Chuy, the facts alleged here clearly describe intolerable acts of severe misconduct.  For an educator to use a child as a pawn to advance one's own personal agenda, an unlawful agenda at that, is quite simply outrageous.

Accordingly, Plaintiffs have sufficiently pleaded facts that state a claim for intentional infliction of emotional distress against Defendants Dixon, Schaeffer and the Student Defendants, and dismissal of these claims at this stage in the proceedings would be improper.

> **5.    Count IV Of The Amended Complaint States A Claim For Invasion Of Privacy Because, Under The Facts Averred, The Student Defendants Publicized Private Facts About O.P.'s Female Medical Condition And Portrayed O.P. In A False Light By Characterizing Her As Dishonest, Disloyal, Racist And Bigoted And Portraying O.P.'s Parents As Racist And Bigoted.**

Under Pennsylvania law, there are four types of invasion of privacy, including publicizing private facts about the plaintiff and unreasonably placing the plaintiff in a false light before the public.  Doe v. Wyoming Valley Health Care Sys., Inc., 987 A.2d 758 (Pa. Super. 2010).  As the court explained in Doe, the elements for publication of private fact are set forth in the Restatement (Second) of Torts § 652D, specifically:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of privacy, if the

34

matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.

Doe, 987 A.2 at 765.

To state a claim for false light invasion of privacy a plaintiff must allege that, "(1) he was publicly placed in a false light as a result of the defendant's actions, (2) the false light in which he was placed would be highly offensive to a reasonable person, and (3) the defendant acted with actual knowledge of or in reckless disregard to the falsity of the publicized information." Graboff v. The Collern Firm, No. 10-1710, 2010 WL 4456923, at *12 (E.D. Pa. Nov. 8, 2010) (motion to dismiss invasion of privacy claim denied where Plaintiff averred that publication of his suspension conveyed the impression that he was unprofessional and that he rendered a false expert opinion; that this publication would be highly offensive to a reasonable person; and that Defendants had knowledge of or acted in reckless disregard of the falsity of the publication.) In Willson v. Yerke, the court denied defendant's motion to dismiss plaintiff's false light claim where the plaintiff alleged that the defendant "left handwritten notes on and in public [] buildings for all to see." No. 3:10cv1376, 2011 WL 332487, at *10 (M.D. Pa. Jan. 31, 2011) (holding publicity element was met). The Plaintiff also alleged that the notes called him an "asshole," a "coward" and a "homo" and "could reasonably be

expected to cause serious offense to a reasonable person . . ." which the court found sufficient to plead the element of offensiveness. Id.

Here, Plaintiffs alleged that the Student Defendants invaded O.P.'s privacy because they transformed her previously private female medical condition, specifically a vaginal yeast infection, into a topic of public discussion and a source of public taunting and humiliation. AC ¶¶ 46-67. As one Defendant family admits, the statements were publicized to "the general school community . . . ." Rasalla Brief at 9. Furthermore, Plaintiffs alleged that at least one of the Student Defendants posted disparaging comments on Facebook. AC ¶ 103. Publicity about a vaginal yeast infection would certainly be highly offensive to a reasonable person, especially a young girl. It is equally obvious that O.P.'s vaginal yeast infection is of absolutely no legitimate concern to the public.

Plaintiffs have averred that the Student Defendants publicly placed O.P. and O.P.'s Parents in a false light because they falsely characterized Plaintiffs as bigoted and racist when in fact, Plaintiffs are neither. AC ¶¶ 156-57, 265, 267. Being accused of being a bigot and a racist would be highly offensive to a reasonable person. Plaintiffs alleged that the Student Defendants knew that Plaintiffs were neither bigots nor racists and knew that Plaintiffs highly valued their relationship with O.P.'s friend and classmate, J.W. Id. Finally, Plaintiffs have averred that the Student Defendants also falsely characterized O.P. as

dishonest and disloyal.  AC ¶¶ 1, 217, 220, 265, 267.  Therefore, Plaintiffs have

sufficiently pleaded the elements necessary to state a claim for invasion of privacy.

> **6.    Count V Of The Amended Complaint States A Claim For
> Civil Conspiracy Because, Under The Facts Averred, The
> Student Defendants, The Library Defendants And
> Defendants Dixon And Schaeffer Acted In Combination
> To Intentionally Harm O.P. And Did Harm Her Through
> At Least One Unlawful Act In Pursuance Of Their
> Common Purpose.**

Under Pennsylvania law, a civil conspiracy requires "(1) a combination of

two or more persons acting with a common purpose to do an unlawful act or to do

a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in

pursuance of the common purpose; and (3) actual legal damage." [3]  Briar Meadows

Dev. Inc. v. South Ctr. Bd. of Supervisors, No. 10-cv-1012, 2010 U.S. Dist. LEXIS

108995, at *31 (M.D. Pa. Oct. 13, 2010) (citation omitted).  The conspiracy "must

be based on an existing independent wrong or tort that would constitute a valid

cause of action if committed by one actor." Levin v. Upper Makefield Twp., 90

Fed.Appx. 653, 667 (3d Cir. 2004) (citation omitted).  Plaintiffs must show

"malice, i.e., an intent to injure . . . ." Thompson Coal Co. v. Pike Coal Co., 412

A.2d 466, 472 (Pa. 1979).  Citing Thompson, the District Defendants argue that

---

[3] Any reliance on Rose v. Bartle, 871 F.2d 331 (3d Cir. 1989), for the proposition
that common law civil conspiracy must be pleaded with particularity is erroneous.
See Petrucci Brief at 6-7.  Rose does not address common law civil conspiracy at
all, but rather civil conspiracy under the federal RICO statute, 18 U.S.C. 1962(d).

"malice will only be found when the sole purpose of the conspiracy is to cause harm to the party that was injured." District Brief at 24. The District Defendants go on to argue that, because Plaintiffs pleaded that the purpose of the meeting of the Library Defendants was "to enable T.M. to evade punishment **and** to continue bullying O.P." harming O.P. was not the **sole** purpose of the conspiracy. Id. (emphasis added). This argument misapprehends the holding of <u>Thompson</u>. <u>Thompson</u> does not stand for the proposition that two unlawful purposes cannot form the basis for a conspiracy claim. Rather, the "sole purpose" requirement means that "[t]his unlawful intent must be absent justification." <u>Thompson</u>, 412 A2d. at 472. As the court explained:

> Assume that what is done is intentional, and that it is calculated to do harm to others. Then comes the question, Was it done with or without just cause or excuse? If it was bona fide done in the use of a man's own property . . . such legal justification would . . . exist not the less because what was done might seem to others to be selfish or unreasonable. . . . But such legal justification would not exist when the act was merely done with the intention of causing temporal harm, without reference to one's own lawful gain, or the lawful enjoyment of one's own rights.

<u>Id</u>. (citations and quotations omitted). Thus, Plaintiffs have sufficiently pleaded that the sole purpose of the conspiracy was to harm O.P.

In <u>Wagner v. Tuscarora Sch. Dist.</u>, No. Civ.A. 1:04-cv-1133, 2005 WL 2319141 (M.D. Pa. Sept. 21, 2005), the court denied defendants' motion to dismiss a civil conspiracy claim where "Plaintiffs have alleged Defendants held meetings

amongst themselves" and where there was allegedly an "agreement among Defendants to defame Plaintiff by reporting baseless allegations of sexual harassment, which they knew to be substantially and materially false." Id. at *8. The court found that "if proven, these allegations taken together would support a claim of conspiracy . . . against the individual Defendants." Id.

Here, Plaintiffs have alleged that the Student Defendants, with an intent to injure O.P. and without any legal justification, committed independent wrongs or torts that constitute valid causes of action, specifically, intentional infliction of emotional distress and invasion of privacy. See, e.g., AC ¶¶ 258, 265, 270. Plaintiffs have alleged that "the Student Defendants acted in various combinations with a common purpose of unlawfully bullying, harassing and otherwise intentionally inflicting emotional distress on O.P." AC ¶ 281. Specifically, Plaintiffs alleged that the Student Defendants met "in class, on the school bus, during extra-curricular activities, and communicated in person, by cell phone, in text messages, emails and online." AC ¶ 282. Plaintiffs also alleged that the Student Defendants "committed several acts in pursuance of their unlawful scheme, including, inter alia, meeting and communicating in person, by phone, through text messages and/or other online communications, on multiple occasions to create, implement and perpetuate a scheme designed to unlawfully bully, harass, torment, humiliate, embarrass and socially isolate O.P." AC ¶ 283.

Similarly, Plaintiffs averred that the Library Defendants, with an intent to injure O.P. and without any legal justification, acted with a common purpose to commit unlawful acts, specifically, § 1983 violations of Plaintiffs' substantive due process rights under the 14th Amendment to the U.S. Constitution. See, e.g., AC ¶¶ 236-37, 277-80. Plaintiffs have further pleaded that the Library Defendants performed an overt act in pursuance of the common purpose, specifically meeting in the library (and by phone with Mrs. Maloney) "to harm O.P. by interfering with and undermining the investigation" into the sexual harassment and other bullying in which the Student Defendants were participating. AC ¶¶ 98-102. Accordingly, Plaintiffs have sufficiently pleaded the elements necessary to support their conspiracy claim and Defendants' Motions to Dismiss this claim must be denied.

> **7.     Count VI Of The Amended Complaint States A Claim For Civil Conspiracy Because, Under The Facts Averred, The District Defendants Acted In Combination To Harm O.P. And Did So Through At Least One Unlawful Act.**

Plaintiffs allege that, in addition to the Library Defendants, the other District Defendants, with an intent to injure O.P. and without any legal justification, acted in combination with a common purpose to commit unlawful acts, specifically § 1983 violations of Plaintiffs' substantive due process rights under the 14th Amendment to the U.S Constitution and violations of O.P.'s federal rights under Title IX. See, e.g., AC ¶¶ 229-30, 233, 292. Plaintiffs have also plead that the District Defendants performed at least one overt act in pursuance of the common

purpose, specifically, inter alia, "meeting, conferring and otherwise communicating in person, by telephone and via electronic means for the unlawful purpose of evading their legal obligations . . ." to O.P. AC ¶ 293. Thus, Plaintiffs have sufficiently pleaded the elements necessary to support their conspiracy claim and Defendants' Motions to Dismiss this claim must be denied.

> **8.     Except For The District Itself, The District Defendants Are Not Entitled To Official Immunity Under Pennsylvania's Political Subdivision Tort Claims Act Because, Under The Facts Averred, They Forfeited Their Official Immunity By Committing An Intentional Tort.**

Under Pennsylvania's Political Subdivision Tort Claims Act (the "PSTCA"),

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) **shall not apply**.

42 Pa.C.S. § 8550 (emphasis added); see also, Vicky M. v. Northeastern Educational Intermediate Unit 19, 486 F.Supp.2d 437, 460 (M.D. Pa. 2007) (applying 42 Pa.C.S § 8550 and concluding that the District Defendants in that case "forfeited their official immunity by committing acts of willful misconduct.") Willful misconduct "has the same meaning as the term intentional tort." Vicky M. 486 F.Supp.2d at 460 (quotations omitted). The District does not address this

critical section of the PSTCA at all.  Instead, the District Defendants argue that

they all "have immunity under the [PSTCA]."  District Brief at 16 (citing 42

Pa.C.S. § 8541, et seq.)  The District Defendants make the specious argument that

they are immune from liability because the claims against them in their official

capacity are really against the District itself, which is immune from liability as a

"local agency" under the PSTCA § 8541. See District Brief at 14-16. In this way,

these Defendants ignore the fact that the Amended Complaint also names all of the

District employees in their **individual** capacities. See AC ¶¶ 10-20.  By ignoring

this fact, and by not addressing 42 Pa.C.S. § 8550, the District Defendants put

forward an argument for official immunity that is fatally flawed.

Contrary to the District Defendants' argument, cases in this jurisdiction

hold that school district employees do not enjoy official immunity from liability

under the PSTCA for the types of torts Plaintiffs have alleged against them, i.e.,

intentional torts.  In Vicky M., the court denied relevant portions of defendants'

motion to dismiss, holding that "[a]t this stage of the proceedings, [] Defendants'

failure to take appropriate action after being put on notice of [] alleged abuse of

students amounted to willful misconduct for which they are not entitled to official

immunity under the PSTCA." Id. at 461 (quotations omitted).  Interpreting and

applying 42 Pa.C.S. § 8550, the court held that the school district employee

defendants, even those "not prominently mentioned throughout the Complaint,"

did not enjoy immunity under the PSTCA as a matter of law because they were alleged to have committed intentional torts. Id. at 460-461. Similarly, in DiSalvio, the Court held that the District Defendants forfeited their immunity from the state law claims against them because,

> [the plaintiff] alleged facts sufficient to give rise to the reasonable inference that these Defendants were on notice about the harassment and knew or should have known that their nonfeasance would allow the harassment to continue or worsen . . . . Accordingly, based solely on the allegations of the Complaint, general though they may be, these Defendants do not enjoy qualified immunity [under the PSTCA].

DiSalvio, 158 F. Supp 2d at 564.

Finally, the District Defendants attempt to argue that Defendant Dixon has absolute immunity under the PSTCA because she is a "high public official." District Brief at 20. This is false. Defendant Dixon is a Principal, and "principals and teachers do not qualify as high public officials for purposes of this common law immunity doctrine . . . ." Wagner, 2005 WL 2319141, at *8. Moreover, the question of whether even "high public officials" are entitled to immunity for intentional torts is unsettled law in this circuit. The District relies primarily on Smith v. Sch. Dist. of Phila., 112 F.Supp.2d 417 (E.D. Pa. 2000) and Pribula v. Wyoming Area Sch. Dist., No. 3:06-cv-2039, 2007 U.S. Dist. LEXIS 51206 (M.D. Pa. 2007) in support of their argument. The District makes no mention, however, of the cases that reach the opposite conclusion. See, e.g., Murphy v. Orloff, No. Civ.A.04-3618, 2004 WL 2861891, at *3 (E.D. Pa. Dec. 13. 2004) ("After a

thorough review of the relevant statutes and interpreting case law, this Court joins in the prior decisions of the United States District Court for the Eastern District of Pennsylvania and finds that Section 8550 of the PSTCA abrogated the common law immunity for high public officials . . . ."); see also Forrest v. Owen J. Roberts Sch. Dist., No. 09–3014, 2011 WL 1196410, at *18 (E.D. Pa. March 31, 2011) ("official immunity does not apply to any act by a high public official that constitutes a crime, actual fraud, actual malice, or willful misconduct.")

Here, as described throughout this Response, Plaintiffs have alleged that the District Defendants engaged not only in nonfeasance, but also in affirmative, unlawful, intentional torts against O.P. and O.P.'s Parents. Thus, with the exception of the District itself, none of these defendants is immune under the PSTCA for any of the state law claims Plaintiffs have alleged against them.

> **9.  Count VII Of The Amended Complaint States A Claim For Negligence Because, Under The Facts Averred, The Parent Defendants Knew Or Should Have Known About The Tortious Behavior Of Their Children And Failed To Correct Or Restrain Their Children, Making Possible The Harm Their Children Inflicted On O.P.**

The Kelly, Petrucci, Rasalla, Creegan, Walsh, Evans and Duverge Defendants all cite to Condel v. Savo, 39 A.2d 51, 52. (Pa. 1944) for the proposition that "the mere relation of parent and child imposes . . . no liability for the torts of the child" and that parents may be liable "where the negligence of the parent makes the injury possible." Defendants' "mere relation" argument is a

straw man. Plaintiffs' allegations against the Parent Defendants are not predicated on the mere relation of the parents and their children.   Rather, Plaintiffs' negligence claims are based on the holding in Condel, namely that parents may be liable "where the negligence of the parent makes the injury possible." Id.

Defendants fail to point out that the parents in the Condel case were actually held liable for their child's tortuous conduct.  Indeed, the decision is based on the proposition that parents' liability "arises from failure to exercise the control which they have over their child, when they know, or in the exercise of due care should know, that injury to another is a natural and probable consequence, for such failure to act and restrain the child amounts to an approval and sanction of, or consent to, his acts by the parents."   Id.   Remarkably, none of the seven Defendants that purported to rely on Condel thought it worth mentioning to this Court that Condel was a bullying case where the parents of the bully knew about their son's behavior and failed to prevent or correct his "bullying, vicious conduct . . . ."  Id.   The Condel court reversed the lower court's decision to grant the Defendant's motion to dismiss, holding that parents can and should be held liable when their children bully other children.  Id.   According to the court in Condel, "we think parents should be held responsible and liable for a dangerous habit of a child of which they have knowledge and take no steps to correct, or restrain.   It is that which constitutes the negligence on the part of the parent." Id. at 53. (citation omitted).

In <u>L.C. v. Central Pa. Youth Ballet</u>, the court, citing to <u>Condel</u>, denied defendants' motion to dismiss plaintiffs' negligence claims where plaintiffs alleged that the parent defendants knew or should have known that their son had a propensity to assault other children but failed to insure that he took the medication prescribed to control his behavior. No. 1:09-cv-2076, 2010 WL 2650640, at *5 (E.D. Pa. July 2, 2010). Moreover, the court noted, "the contours of the duty imposed upon the [parent-defendants]" depend upon the facts and circumstances of the particular case, and thus "**cannot be accurately defined before the conclusion of discovery**." <u>Id</u>. at note 13 (emphasis added).

Here, Plaintiffs have alleged that the Parent Defendants were negligent because they "knew or should have known" of their duty to "prevent their children from harming O.P. and O.P.'s Parents" but failed to do so. AC ¶¶ 299-302. Specifically, Plaintiffs averred that the Parents of T.M, J.P., K.K., A.R., B.C., A.H. and M.E. knew about their children's unlawful bullying and sexual harassment of O.P. and that such actual knowledge was communicated to them in person by the District during parent conferences. AC ¶¶ 132-33. Plaintiffs also specifically alleged that the parents of Defendants E.W. and I.D. "knew or should have known" about their daughters' unlawful behavior but failed to correct or restrain their children who continued to bully and sexually harass O.P. AC ¶¶ 139-47. In addition to the specific facts plead by Plaintiffs, this Court must draw all

46

reasonable inferences therefrom in favor of Plaintiffs. Here, Plaintiffs have alleged that the Student Defendants continued and escalated their bullying and sexual harassment long after the Parent Defendants knew or should have known, and that the Parent Defendants were capable of controlling their children, but failed to do so. These averments, taken as true, certainly permit this court to infer the obvious conclusion: that the Parent Defendants failed to correct or restrain their children as required under Condel.

> **10.    Count VIII States A Claim For Strict Parental Liability Because, Under The Facts Averred, The Parent Defendants Are Statutorily Strictly Liable For The Harm Their Children Inflicted On O.P.**

Under Pennsylvania law, "[a]ny parent whose child is found liable . . . [for] a tortious act shall be liable to the person who suffers the injury . . . ." 23 Pa. Const. Stat. § 5502. Here, Plaintiffs have pleaded that the Parent Defendants must be strictly liable for the harm their children inflicted on O.P. if their children are found liable by this Court. AC ¶¶ 306-08.

> **11.    Plaintiffs State A Claim For Punitive Damages Because, Under The Facts Averred, Defendants' Outrageous Conduct Was Willful or Malicious.**

Under Pennsylvania law, punitive damages are available to a plaintiff where the defendant engaged in "outrageous conduct that was willful or malicious." Advanced Medical Inc. v. Arden Medical Systems, Inc., 955 F.2d 188, 202 (3d Cir. 1992). In Pennsylvania, punitive damages serve two purposes, "to punish the

wrongdoer and to deter both him and others from engaging in similar conduct in the future." Delahanty v. First Pennsylvania Bank, N.A., 464 A.2d 1243, 1263 (Pa.Super. 1983).    Furthermore, where state actors are sued in their official capacity under § 1983, a plaintiff "may recover punitive damages . . . if the official acted with a malicious or evil intent or in callous disregard of plaintiff's federally protected rights." Wray v. Painter, No. 09–5792, 2011 WL 1226122, at *9 (E.D. Pa. March 28, 2011) (citations and quotations omitted). In Wray, the court held that where the plaintiff alleged that the defendant lied about having a search warrant and entered plaintiff's home without consent to seize her dog, "whether to award punitive damages is a matter for the jury to determine." Id. at *10.

Here, Plaintiffs have alleged that they are entitled to punitive damages because the Defendants conduct was outrageous, willful and malicious. AC ¶¶ 61, 102, 126, 129-130, 142, 169, 256, 258-260, 262, 274, 279, 280, 284, 289, 292, 296, 304. Furthermore, Plaintiffs have averred that the Defendants should be punished and others deterred from repeating their cruel and unlawful behavior. Id. Accordingly, this Court must deny Defendants' Motions and permit a fact-finder to decide whether to award Plaintiffs punitive damages.

## VI.    CONCLUSION

At this early stage of the proceedings, this Court should not decide whether it is "improbable" or even "very remote and unlikely" that Plaintiffs will ultimately

prevail in their case. <u>Twombly</u>, 550 U.S. at 556. To deny Defendants' Motions to Dismiss, this Court must simply find that when all of the well pleaded in Plaintiffs' 78-page, 308-paragraph, 8-Count Amended Complaint are taken as true, an entitlement to relief is "plausible." <u>Id</u>. In contrast, to dismiss Plaintiffs' claims would require this Court to rule that even if everything Plaintiffs have alleged is true, the law offers them no relief. The only question before this Court at this time is whether Plaintiffs are entitled to take one more legal step. They have earned that entitlement by meeting and exceeding their burden to survive Defendants' Motions to Dismiss. It would be legally wrong and profoundly unjust, at this early stage, to dismiss these claims and close the courthouse doors to O.P. Plaintiffs renew here the plea they made in their Amended Complaint – for this Court to rule that, if what Plaintiffs allege is true, our legal system will not condone it.

Accordingly, Plaintiffs respectfully request that all Defendants' Motions to Dismiss the Amended Complaint be denied.

Respectfully submitted,          **FRANKEL & KERSHENBAUM, LLC**

                                 By:

Dated: May 2, 2011               /s/Dave Frankel
                                 Dave Frankel, Esq. (PA ID 203234)
                                 /s/Joshua M. Kershenbaum
                                 Joshua M. Kershenbaum, Esq. (PA ID 203270)
                                 FOUR TOWER BRIDGE
                                 200 BARR HARBOR DRIVE, SUITE 400
                                 WEST CONSHOHOCKEN, PA 19428
                                 TEL: (610) 260-6054; FAX: (610) 646-0888
                                 DAVE@DAVEFRANKEL.COM
                                 JOSH@DAVEFRANKEL.COM
                                 **Attorneys for Plaintiffs**

## **CERTIFICATE OF SERVICE**

DAVE FRANKEL, ESQUIRE, hereby certifies that on the 2nd day of May, 2011, he caused to be served a true and correct copy of the foregoing OMNIBUS REPSONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT, by ECF to all counsel of record.

/S/ DAVE FRANKEL, ESQUIRE
DAVE FRANKEL, ESQUIRE