IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BARBARA and GEORGE PRICE, *on*     :
*behalf of their daughter O.P., a minor,*   :     CIVIL ACTION
*and individually on their own behalf,*    :
                                  :     NO. 11-0095
         Plaintiffs,        :
                                    :
      v.                          :
                                    :
SCRANTON SCHOOL DISTRICT, *et*     :
    *al.,*                                :
                                    :
         Defendants.       :

## OPINION

**Slomsky, J.**                                                  **January 6, 2012**

TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     SUMMARY OF PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    SUMMARY OF RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.    LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

V.     DISCUSSION
        A.     Count I: O.P. v. Defendant Scranton School District Alleging Sexual Harassment
             and Discrimination in Violation of 20 U.S.C. § 1681, *et seq.* (Title IX) . . . . . . . 9
        B.     Count II: Plaintiffs v. Defendant School District and School District Employee
             Defendants Alleging Violation of Substantive Due Process Pursuant to
             42 § U.S.C. 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
             i.     Motion to Dismiss Count II by Four School District Employee Defendants
                 in Their Official Capacity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
             ii.    Motion to Dismiss Count II by Four School District Employee Defendants
                 in Their Individual Capacity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        C.     Count III: Intentional Infliction of Emotional Distress Against Student
             Defendants and Defendants Dixon and Schaeffer . . . . . . . . . . . . . . . . . . . . . . . . 23

    i.  Intentional Infliction of Emotional Distress Against
      Student Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    ii.  Intentional Infliction of Emotional Distress Against Defendants Dixon
      and Schaeffer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25
  D. Count IV: Invasion of Privacy Against Student Defendants . . . . . . . . . . . . . . 26
    i.  Allegations of False Light Against Student Defendants. . . . . . . . . . . . . 26
    ii.  Allegations of Publication of Private Facts Against
      Student Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
  E. Count V:  Civil Conspiracy by O.P. Against Student Defendants, Library
    Defendants, and Defendants Dixon and Schaeffer . . . . . . . . . . . . . . . . . . . . .  28
  F. Count VI:  Civil Conspiracy by Plaintiffs Against School District Employee
    Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
  G. Count VII: Negligence Claim Against Parent Defendants . . . . . . . . . . . . . . . 31
  H. Count VIII: Parental Strict Liability Claim Against Parent Defendants . . . . . . . 34

VI. CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## I.   INTRODUCTION

On March 21, 2011, Plaintiffs Barbara and George Price ("Plaintiff Parents"), on behalf of themselves and their minor daughter, O.P. ("O.P.," together with Plaintiff Parents, "Plaintiffs"), filed an Amended Complaint against the Scranton School District, eleven School District employees ("School District Employee Defendants"),[1] nine female students ("Student Defendants"),[2] and their respective parents ("Parent Defendants").[3] (Doc. No. 71).   The Amended Complaint alleges violations of 20 U.S.C. § 1681, 42 U.S.C. § 1983, and commission of the torts of intentional infliction of emotional distress, invasion of privacy, civil conspiracy, negligence, and parental strict liability.  (Id.)  Each Defendant has filed a Motion to Dismiss the

---

[1]      The School District Employee Defendants and the capacity in which they are sued are as follows:  (1) Robert Lesh, President of the School District Board of Directors, in his official and individual capacity, (2) Robert Sheridan, Member of the School District Board of Directors, in his official and individual capacity, (3) William King, Superintendent of Schools in the District, in his official and individual capacity, (4) Principal Barbara Dixon, in her official and individual capacity, (5) Kevin Rogan, Vice Principal, in his individual capacity, (6) Melissa Rose, Vice Principal, in her individual capacity, (7) Julie Maloney, teacher, in her individual capacity,  (8) Karyn Schaeffer, guidance counselor, in her individual capacity, (9) Amy Lloyd, librarian, in her individual capacity, (10) Maria Rossi, teacher, in her individual capacity, and (11) Lynne Michael, teacher, in her individual capacity.

[2]      The Student Defendants are A.R., B.C., J.P., T.M., M.E., A.H., I.D., and E.W. The Amended Complaint also names Student K.K. as a Defendant in this action.  On October 6, 2011, K.K. and her parents, Defendants Paul and Colleen Kelly, entered into a Settlement Agreement with Plaintiffs (Doc. No. 117).  Accordingly, K.K. and her parents, Paul and Colleen Kelly, have been terminated as parties to this action.

[3]      The Parent Defendants are:  (1) Anthony and Tina Rasalla (with A.R., the "Rasalla Defendants"), (2) Gene and Yvette Creegan (with B.C., the "Creegan Defendants), (3) Peter and Cindy Petrucci (with J.P., the "Petrucci Defendants"), (4) James and Julie Maloney (with T.M., the "Maloney Defendants"), (5) Ronald Evans and Lisa Ognoski (with M.E., the "Evans Defendants"), (6) Wayne and Nancy Hiller (with A.H., the "Hiller Defendants"), (7) Jose and Carmen Duverge (with I.D., the "Duverge Defendants"), and (8) Robert and Kathryn Walsh (with E.W., the "Walsh Defendants").

Amended Complaint pursuant to F. App'xeral Rule of Civil Procedure 12(b)(6).  (See Doc. Nos. 78, 80, 82, 84, 87, 88, 90, 93, and 95).

For reasons that follow, the Court will deny Defendant School District's Motion to Dismiss (Doc. No. 93); grant School District Employee Defendants' Motion to Dismiss (Doc. No. 93); grant Student Defendants' Motion to Dismiss (Doc. Nos. 78, 80, 82, 84, 87–88, 90, 95); and grant Parent Defendants' Motion to Dismiss (Doc. Nos. 78, 80, 82, 84, 87–88, 90, 95).

## II.   SUMMARY OF PROCEDURAL HISTORY

On January 12, 2011, Plaintiffs filed a Complaint against all Defendants.  (Doc. No. 1). Each Defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. Nos. 24, 26, 33, 44, 45, 48, 49, 52, 57), except for the Walsh Defendants, who filed an Answer to the Complaint.  (Doc. No. 54).

On March 21, 2011, Plaintiffs filed the Amended Complaint against all Defendants. (Doc. No. 71).  This Complaint contains ten counts.  The Counts and Defendants named in each one are as follows:

- Count I, alleging a hostile environment discrimination claim in violation of 20 U.S.C. § 1681, *et seq* (Title IX):

    (1)    Scranton School District

- Count II, alleging a violation of substantive due process pursuant to 42 U.S.C. § 1983:

    (1)    Scranton School District

    (2)    President Lesh in his official and individual capacity

    (3)    Defendant Sheridan in his official and individual capacity

    (4)    Superintendent King in his official and individual capacity

    (5)      Principal Dixon in her official and individual capacity

    (6)      Vice Principal Rogan in his individual capacity

    (7)      Vice Principal Rose in her individual capacity

    (8)      Ms. Maloney in her individual capacity

    (9)      Ms. Rossi in her individual capacity

    (10)    Ms. Lloyd in her individual capacity

    (11)    Ms. Michael in her individual capacity

    (12)    Ms. Schaeffer in her individual capacity

- Count III, alleging intentional infliction of emotional distress, a Pennsylvania state law claim:

    (1) – (9)  Each of the nine Student Defendants

    (10)    Principal Dixon in her official and individual capacity

    (11)    Ms. Schaeffer in her individual capacity

- Count IV, alleging invasion of privacy, a Pennsylvania state law claim:

    (1) – (9)  Each of the nine Student Defendants

- Count V, alleging civil conspiracy, a Pennsylvania state law claim:

    (1) – (9)  Each of the nine Student Defendants

    (10)    Ms. Maloney in her individual capacity

    (11)    Ms. Lloyd in her individual capacity

    (12)    Ms. Rossi in her individual capacity

    (13)    Ms. Michael in her individual capacity

    (14)    Principal Dixon in her official and individual capacity

    (15)    Ms. Schaeffer in her individual capacity

- Count VI, alleging civil conspiracy, a Pennsylvania state law claim:

    (1)    Scranton School District

    (2)    President Lesh in his official and individual capacity

    (3)    Defendant Sheridan in his official and individual capacity

    (4)    Superintendent King in his official and individual capacity

    (5)    Principal Dixon in her official and individual capacity

    (6)    Vice Principal Rogan in his individual capacity

    (7)    Vice Principal Rose in her individual capacity

    (8)    Ms. Maloney in her individual capacity

    (9)    Ms. Rossi in her individual capacity

    (10)   Ms. Lloyd in her individual capacity

    (11)   Ms. Michael in her individual capacity

    (12)   Ms. Schaeffer in her individual capacity

- Count VII, alleging negligence, a Pennsylvania state law claim:

    (1) – (9)    Each of the nine pairs of Parent Defendants

- Count VIII, alleging parental strict liability in violation of 23 Pa. Code § 5501, *et seq.*

    (1) – (9)    Each of the nine pairs of Parent Defendants

On April 5, 2011, the Court issued an Order dismissing the first Complaint and the initial Motions to Dismiss as moot because the Amended Complaint was filed. (Doc. No. 73). Each Defendant subsequently filed another Motion to Dismiss targeting the Amended Complaint. (Doc. Nos. 78, 80, 82, 84, 87, 88, 90, 93, and 95). On May 2, 2011, Plaintiffs filed an Omnibus Response in Opposition to Defendants' Motions to Dismiss. (Doc. No. 104). On June 8, 2011,

4

the Court held a hearing on the Motions to Dismiss.

### III.   SUMMARY OF RELEVANT FACTS

The following facts are alleged in the Amended Complaint and are set forth in the light most favorable to the Plaintiffs.  In October 2009, O.P. was a seventh grade student in the Scranton School District.  (Doc. No. 71 ¶ 45).  Around this time, O.P. developed a discomforting yeast infection causing her to scratch her genital area.  (Id. ¶¶ 46–47).  A group of Student Defendants, K.K., T.M., J.P., A.R., B.C., A.H., and M.E., noticed O.P.'s behavior and began making scratching sounds to taunt O.P.  (Id. ¶¶ 48–49).  O.P. endured these taunts every day at school, multiple times a day.  (Id. ¶ 56).  The meaning of the scratching sound was spread around the school by Student Defendants I.D., K.K., T.M., J.P., A.R., B.C., A.H., and M.E, embarrassing O.P. and causing her to hide in the restroom to avoid the taunting.  (Id. ¶¶ 60, 63).  Numerous teachers not named as defendants in this case knew about the harassment directed at O.P., but did not intervene on O.P.'s behalf.  (Id. ¶ 64).  The harassment escalated and the Student Defendants began encouraging other students to harass O.P.  (Id. ¶ 68).  They directed slurs at her, calling her a "bitch," a "skank," a "slut," a "tramp," and a "whore."  (Id.)  The verbal attacks continued throughout the school year, detracting from O.P.'s school experience.  (Id. ¶¶ 70-71).

On April 7, 2010, O.P. told her parents about the harassment at school and that she did not "want to exist any more."  (Doc. No. 71 ¶ 76).  The following morning, Plaintiff Parents called the school to report the harassment.  (Id. ¶¶ 77–79).  Defendants Principal Dixon and Vice Principal Rogan agreed to meet with Plaintiffs on April 9, 2010.  (Id.)  At the meeting, O.P. explained what she had been experiencing since October 2009.  (Id. ¶ 80).  Defendant Dixon

5

responded by reprimanding O.P. for not coming forward about the harassment sooner. (Id. ¶ 81). On April 12, 2010, Dixon met with all Student Defendants, who confirmed that O.P. had faced months of harassment. (Id. ¶¶ 94–96). Before Student Defendant T.M. met on April 12, 2010 with Principal Dixon, she was called into a meeting in the library with School District Employee Defendants Lloyd, Rossi, Michael, and Maloney[4] ("Library Defendants"). (Id. ¶¶ 98–99). They advised T.M. on how to respond to questions she would face from Principal Dixon. (Id. ¶ 100). Apparently, after the Student Defendants met with Principal Dixon, Student Defendants K.K., A.R., B.C., J.P., T.M., M.E., and A.H. received some form of punishment for their role in the harassment.

After the meeting between Dixon and Student Defendants, parent conferences were held between Principal Dixon and Parent Defendants of the students who received punishment for the harassment. (Doc. No. 71 ¶¶ 132–33). Despite these meetings, the harassment continued. In one instance, Student Defendant A.R. threatened O.P., stating that she would harm O.P., and that her mother would harm O.P.'s mother. (Id. at ¶ 134). On April 23, 2010, Plaintiff Mrs. Price again expressed concern to Principal Dixon about how her daughter was being treated at school and what she believed to be an inadequate response from the School District. (Id. ¶ 105). Dixon stated that she would arrange the seating in the cafeteria so that the Student Defendants would not sit with each other. (Id. ¶ 107). It took six days to implement these changes, although some Student Defendants continued to sit together. (Id.)

Dixon also suggested that O.P. meet with Student Defendants so that they could apologize to O.P. (Id. ¶ 109). Mrs. Price explained that her daughter was not emotionally

---

[4]      Mrs. Maloney is a teacher at the school and T.M.'s mother. (Id. ¶ 97).

prepared to meet with the students and Dixon said O.P. would receive written apologies instead. (Id. ¶¶ 111–12).  As of the date of filing of the Amended Complaint, O.P. had not received any written apologies.  (Id. ¶ 113).

Frustrated by Principal Dixon's failure to stop the bullying, Plaintiffs approached Defendant Superintendent King.  (Doc. No. 71 ¶ 118).  He also failed to address the problem to Plaintiffs' satisfaction.  He instructed Principal Dixon to handle the problem "at the building level."  (Id. ¶ 122).  Shortly thereafter, Dixon instructed Defendant Guidance Counselor Schaeffer to call O.P. out of class, tell her that she needed psychological help, and then send her back to class.  (Id. ¶ 128).  Schaeffer complied, all without consulting O.P.'s parents.  (Id.)

The harassment of O.P. continued through the summer when students K.K., A.R., B.C., J.P., T.M., M.E., and A.H. told students at another school, Marian Catholic School, about O.P.'s yeast infection and the scratching sound.  (Doc. No. 71 ¶ 136).  The verbal abuse escalated with the start of the 2010-2011 school year.  (Id. ¶ 141).  Student Defendants spread gossip about O.P. and accused O.P. of making derogatory remarks about other classmates.  (Id.)  Student Defendant T.M. told another student, J.W., that O.P. was not allowed to be friends with J.W. because J.W. is African American.  (Id. ¶ 156).  Other classmates were also told that O.P. made disparaging comments about them, although O.P. never made any such remarks.  (Id. ¶¶ 158–59).

In October 2010, Plaintiffs met several times with Principal Dixon and Vice Principal Rose to tell them the harassment was continuing.  (Doc. No. 71 ¶ 164).  When this approach proved futile, Plaintiffs sought legal help (Id. ¶ 170) and agreed to attend mediation  (Id. ¶ 177). Plaintiffs allege that this effort failed because Defendant School District selected an unqualified mediator and provided the mediator with names of only two of the Student Defendants.  (Id. ¶¶

178–81).  Additionally, Defendant School District refused to participate in the mediation.  (Id. ¶ 179).  Accordingly, the mediation never took place.  (Id. ¶ 191).  Plaintiff Mr. Price attempted to facilitate a resolution by meeting with School District Employee Defendants Lesh and Sheridan, the President and a member of the Board of Directors, but neither individual ever followed up with Mr. Price.  (Id. ¶ 206).

As a result of the harassment, O.P. is being treated by a therapist, suffers from post-traumatic stress disorder, depression, and anxiety, and is taking a prescription anti-depressant. (Doc. No. 71 ¶ 223).  She has contemplated suicide on several occasions and suffers from nightmares.  (Id.)  Her grades have declined, she is socially isolated, suffers from a loss of appetite, and has been unable to participate in extracurricular school activities.  (Id.)  O.P. will be leaving the School District and Plaintiffs will have to pay tuition at a private school.  (Id.)

## IV.    LEGAL STANDARD

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in the Supreme Court's Opinion Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).  After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 1949.  See also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp. set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss.  629 F.3d 121, 130 (3d Cir. 2010).  See also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (applying the principles of Iqbal and articulating the 12(b)(6) analysis as a two-part test).

8

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago, 629 F.3d at 130 (quoting Iqbal, 129 S. Ct. at 1947, 1950). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, No. 10-3539, 2011 WL 2044166, at *2 (3d Cir. May 26, 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler, 578 F.3d at 210-11 (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'– 'that the pleader is entitled to relief.'" Iqbal, 129 S Ct. at 1950. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## V.    DISCUSSION

   A.    Count I: O.P. v. Defendant Scranton School District Alleging Sexual Harassment and Discrimination in Violation of 20 U.S.C. § 1681, et seq. (Title IX)

To establish a Title IX violation in a school setting, Plaintiffs must plead sufficient facts to show "(1) a sexually hostile educational environment; (2) that [Plaintiffs] provided actual

9

notice to 'an appropriate person' who had authority to take corrective measures; and (3) that the institution's response to the harassment amounted to deliberate indifference." Bennett v. Pa. Hosp. Sch. of Nurse Anesthesia, No. 01-4098, 2002 WL 32341792 at *3 (E.D. Pa. Oct. 29, 2002) (citing Gebser v. Lago Vista Independent Sch. Dist., 524 U.S. 274, 291-92 (1998)).[5] The harassment faced by the student must go beyond simple gender-based taunting, and must be so severe that it harms the student's educational experience and results in a denial of educational opportunities.  See Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 651-52 (1999).

Pursuant to the Rule 12(b)(6) analysis articulated by the Third Circuit, the Court, after identifying the elements of the claim, must next identify Plaintiffs' allegations that are no more than conclusions and not entitled to the assumption of truth. Santiago, 629 F.3d at 130.  Here, the Amended Complaint does not contain conclusory statements regarding the Title IX claim. Therefore, all facts will be given the assumption of truth and will be viewed in the light most favorable to Plaintiffs.  Next, the Court must determine if the well-pleaded facts, entitled to an assumption of truth, "plausibly give rise to an entitlement for relief."  Santiago, 629 F.3d at 130 (quoting Iqbal, 129 S.Ct. at 1950).  As discussed below, all elements are sufficiently pled against Defendant Scranton School District and may entitle Plaintiffs to relief.  Therefore, the Motion to Dismiss Count I will be denied as to the School District.

The first element of a Title IX violation is the existence of a sexually hostile educational environment.  To satisfy this requirement, the harassment in the educational environment "must

---

[5]     Title 20, United States Code, Section 1681 provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

both: (1) be viewed subjectively as harassment by the victim and (2) be objectively severe or pervasive enough that a reasonable person would agree that it is harassment." Saxe v. State College Area Sch. Dist., 240 F.3d 200, 205 (3d Cir. 2001) (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993)). Additionally, the harassment must rise to the level that "effectively denie[s] equal access to an institution's resources and opportunities." Davis, 526 U.S. at 631.

Plaintiffs' allegations satisfy the standard for a sexually hostile educational environment. The facts alleged in the Amended Complaint leave no doubt that O.P. subjectively viewed the behavior of her classmates as harassment. This is evident by the fact that O.P. and her Parents repeatedly complained about the gender-based taunting, slurs, and ridicule to which O.P. was subjected for having a female medical condition, the yeast infection. (Doc. No. 71 ¶¶ 77, 80, 105, 114, 118). O.P. was called a "bitch," a "skank," a "slut," a "tramp," and a "whore." (Id. ¶ 68). The facts alleged establish that O.P. was upset by this behavior and that she and her parents took affirmative action to stop it.

The Amended Complaint also contains sufficient facts to objectively establish that the harassment denied O.P. equal access to the school's resources and opportunities. The behavior of her classmates caused O.P. to leave class, suffer a drop in her grades, withdraw from her position on the school yearbook, and decide to leave the School District altogether. (Id. ¶ 223). From these facts, a reasonable person could conclude that the daily harassment created a hostile educational environment. Davis, 526 U.S. at 653–54 (holding that allegations of months of harassment by the plaintiff's classmates, which caused plaintiff's grades to drop and plaintiff to become depressed, was "objectively offensive").

11

The second element of a Title IX violation requires a plaintiff to give actual notice of the harassment to appropriate persons. An appropriate person is "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the . . . district's behalf." Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 360 (3d Cir. 2005) (alteration in original) (quoting Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998)). Plaintiffs have pled that appropriate individuals in the School District had actual knowledge of the harassment. Plaintiffs met with Principal Dixon and Vice Principal Rogan on April 9, 2010 and informed them of the bullying that O.P. was facing every day at school. (Doc. No. 71 ¶¶ 79–80). On April 23, 2010, Plaintiff Mrs. Price again expressed to Principal Dixon her concerns about the harassment of her daughter. (Id. ¶ 105). Plaintiffs also contacted Defendant Superintendent King for help and informed him of the bullying. (Id. ¶ 118). The harassment continued through the summer and into the next school year. Plaintiffs then met with Defendant Dixon and Defendant Vice Principal Rose in October 2010 to complain once more about the harassment. (Id. ¶ 164). These facts establish that appropriate school personnel had actual knowledge that O.P. was being sexually harassed.

The third and final element of a Title IX violation is that the response by Defendant School District was deliberately indifferent. See Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 257 (2009). The facts alleged in the Amended Complaint, when construed in the light most favorable to Plaintiffs, plausibly give rise to a finding of deliberate indifference on the part of Defendant School District.

In the school setting, "administrators are deemed to act with deliberate indifference 'only where the school's response to the harassment or lack thereof is clearly unreasonable in light of

12

the known circumstances.'" <u>Whitfield v. Notre Dame Middle Sch.</u>, 412 F. App'x 517, 522 (3d Cir. 2011) (quoting <u>Davis</u>, 526 U.S. at 648).  When determining if the allegations are sufficient to state a claim against the school district for harassment of a student by other students, the Court must consider if the school district's deliberate indifference made a student vulnerable to the harassment. <u>Davis</u>, 526 U.S. at 645.

In <u>Davis</u>, the Supreme Court reviewed a motion to dismiss a Title IX claim against a school district that allegedly failed to take appropriate steps to end months of a student sexually harassing a female fifth grade student. <u>Davis</u>, 526 U.S. at 636–38.  The alleged harassment consisted of sexually suggestive comments and attempts to inappropriately touch the plaintiff. <u>Id.</u> at 633–34.  As a result of the harassment, the plaintiff's grades dropped and she wrote a suicide note. <u>Id.</u> at 634.  Several of the plaintiff's teachers and her principal had actual knowledge of the harassment, but failed to respond adequately. <u>Id.</u> at 634–35.  The plaintiff alleged that the school district was deliberately indifferent because it failed to train its employees on how to respond to sexual harassment and did not establish a policy regarding sexual harassment. <u>Id.</u> at 635–36.  The Supreme Court held that the school district exhibited "deliberate indifference to known acts of peer sexual harassment." <u>Id.</u> at 648.  The Court noted that the plaintiff's allegations could demonstrate that the school's response to the harassment was "clearly unreasonable in light of the known circumstances." <u>Id.</u>

The Third Circuit recently considered a deliberate indifference claim in the school setting. In <u>Whitfield</u>, the plaintiff, a student, experienced physical and verbal abuse at school because of

her race.[6]  412 F. App'x at 519-20.  In response to the abuse, the school on multiple occasions disciplined students who were harassing the plaintiff and initiated a racial diversity program.  Id. at 522.  The court held that the school was not deliberately indifferent to the harassment because the steps taken to end the harassment were not clearly unreasonable.  Id.

The instant case is distinguishable from Whitfield and more akin to the Supreme Court decision in Davis.  Plaintiffs allege that after Plaintiff Mrs. Price complained to Principal Dixon on April 23, 2010 about the harassment of O.P.  It took six days for the school to change the cafeteria seating, and even after the seating was changed, some Student Defendants continued to sit together, exposing O.P. to further bullying.  (Doc. No. 71 ¶ 107).  Further, after Defendant Superintendent King was made aware of the bullying, he minimized the situation by instructing Principal Dixon to handle the problem "at the building level" instead of taking appropriate steps himself to end the bullying.  (Id. ¶ 122).  Unlike Whitfield, there is no indication that School District Employee Defendants disciplined the harassing students on multiple occasions.  Rather, the facts as pleaded establish that School District Employee Defendants attempted to minimize the behavior of the students and only attempted to discipline some of them on one occasion.  In further contrast to Whitfield, School District Employee Defendants apparently did not implement any policy to educate their students or employees about sexual harassment.  When viewed in the light most favorable to Plaintiffs, the facts as pled plausibly demonstrate that School District Employee Defendants' response to the harassment of O.P. was deliberately indifferent and made

---

[6]     In Whitfield, the plaintiff brought a claim pursuant to Title VI, which prohibits discrimination on the basis of race, color, and national origin in programs and activities receiving federal financial assistance.  The court stated that courts should "construe Titles VI and IX similarly because they use parallel language."  Whitfield, 412 F. App'x at 521 n.2.

O.P. more vulnerable to harassment from Student Defendants. See Davis, 526 U.S. at 642-43.

For these reasons, Defendant Scranton School District's Motion to Dismiss Plaintiff's claim alleging violation of Title IX as set forth in Count I will be denied.

B.   Count II:  Plaintiffs v. Defendant School District and School District Employee Defendants Alleging Violation of Substantive Due Process Pursuant to 42 U.S.C. § 1983

Eleven School District Employee Defendants[7] sued in their individual capacity have moved to dismiss Count II in which Plaintiffs allege two constitutional violations pursuant to 42 U.S.C. § 1983.[8] The alleged violation is that Plaintiff Parents were denied their constitutional right to the care, custody, and control of their child under the due process clause of the Fourteenth Amendment. (Doc. No. 71 ¶ 253). The second alleged violation is that O.P. was denied her constitutional right to bodily integrity under the same due process clause. (Id. ¶ 247).

---

[7]     The Motion to Dismiss of Barbara Dixon, William King, Robert Lesh, Amy Lloyd, Julie Maloney, Lynne Michael, Kevin Rogan, Melissa Rose, Maria Rossi, Karyn Schaeffer, and Robert Sheridan seek dismissal of Count II on their behalf. (Doc. No. 94 at 7-12). As the Court reads Defendant Scranton School District's Brief in Support of Motion to Dismiss (Doc. No 94), Defendant Scranton School District has not moved to dismiss Count II and will remain as the sole Defendant in Count II.

[8]     42 U.S.C. § 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

15

These constitutional violations allegedly arose because the Defendant School District and the School District Employee Defendants failed to take reasonable steps to stop the harassment of O.P. In making these allegations, Plaintiffs rely on the substantive due process prong of the due process clause. The eleven School District Employee Defendants contend that Plaintiffs have failed to plead facts showing a denial of substantive due process, and that they cannot be held liable in their individual capacity because they are entitled to qualified immunity.

In addition, four of the eleven School District Employee Defendants sued in their official capacity have moved to dismiss Count II on the basis that the claims asserted merge with the claim against Defendant School District. For reasons stated below, the Court will grant the Motions to Dismiss Count II as to each School District Employee.

   1.  Motion to Dismiss Count II by Four School District Employee Defendants in Their Official Capacity

Four School District Employee Defendants are named as defendants in Count II in their official capacity. They are: (1) Principal Dixon, (2) Robert Lesh, President of the School District Board of Directors, (3) Robert Sheridan, Member of the School District Board of Directors, and (4) Superintendent King. Count II alleges a violation of Plaintiffs' civil rights pursuant to 42 U.S.C. § 1983. As noted, Defendants assert that claims brought under § 1983 against them in their official capacity must be dismissed because they merge with the claim against Defendant School District. The Court agrees.

The U.S. Supreme Court has held with respect to § 1983 claims, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) (citing

16

Brandon v. Holt, 469 U.S. 464, 471 (1985)).  The four School District Employee Defendants are correct that they cannot be held liable in their official capacity for denying the substantive due process rights of Plaintiffs.  Accordingly, the claims alleged in Count II against Principal Dixon, Robert Lesh, Robert Sheridan, and Superintendent King in their official capacity will be dismissed because they merge with the claim against the Defendant School District.

> 2.    Motion to Dismiss Count II by Eleven School District Employee
>        Defendants in Their Individual Capacity

To state a claim under 42 U.S.C. § 1983 against an actor in his or her individual capacity, a plaintiff must establish that the "conduct complained of was committed by a person acting under color of state law" and that the conduct must "depriv[e] the complainant of rights secured under the Constitution or federal law." Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 590 (3d Cir. 1988).  The constitutional right at issue here is substantive due process.  The elements of a substantive due process claim are: (1) a defendant acted under color of state law; (2) the interest at issue is protected by the due process clause; and (3) the state actor's deprivation shocks the conscience.  See Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 189 (3d Cir. Pa. 2009) (quoting Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008)); Sameric Corp., 142 F.3d at 590.  As to the third element, the Third Circuit has applied three possible standards in determining whether a government actor's conduct shocks the conscience: (1) deliberate indifference; (2) gross negligence or arbitrariness; or (3) intent to cause harm.  See Phillips v. County of Allegheny, 515 F.3d 224, 241 (3d Cir. 2008).  When a government actor had sufficient time to consider the action taken before engaging in the alleged constitutional violation, the deliberate indifference standard should be applied. Patrick v. Great Valley Sch. Dist., 296 F.

17

App'x 258, 261–62 (3d Cir. 2008).[9]  In applying the deliberate indifference standard, a court must evaluate "what level of conduct is egregious enough to amount to a constitutional violation and, then, whether there is sufficient evidence that [the defendant's] conduct rose to that level." Chambers, 587 F.3d at 179 (quoting Nicini v. Morra, 212 F.3d 798, 809 (3d Cir. 2000)).

First, regarding the element of acting under color of state law, because the eleven School District Employee Defendants work for the school district, a state municipality, they were acting under color of state law. See, e.g., Wooleyhan v. Cape Henlopen Sch. Dist., No. 10-153, 2011 WL 4048976, at *3 (D. Del. Sept. 12, 2011) (citing Spirk v. Centennial Sch. Dist., No. 04-4821, 2005 WL 433321, at *4–5) (finding school districts constitute state actors for the purpose of § 1983 actions).

Second, Plaintiffs must prove that they had a liberty interest protected by substantive due process.  In this regard, the United States Supreme Court has held that liberty interests include a citizen's constitutional right to family, parenthood, and bodily integrity. See Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 847–49 (1992) (citations omitted).  Here, Plaintiff Parents allege they were deprived of their constitutional right to the care, custody, and control of their child because School District Employee Defendants failed to sufficiently address O.P.'s mistreatment at school.  They further allege certain School District Employees took other

---

[9]     Courts have held that the deliberate indifference standard applies differently in Title IX and substantive due process cases.  Similar facts may show the presence of deliberate indifference in a Title IX claim and not in a substantive due process claim. See Lindsley v. Gerard Sch. Dist., 213 F. Supp. 2d 523, 528–29 (W.D.Pa. 2002) ("[I]t is inherently unsound to assume that the Court's rationale in...a Title IX case...can be applied in the context of a federal constitutional due process claim.").

affirmative actions in violation of their substantive due process rights.[10]  (Doc. No 72 ¶¶ 72, 80,

98–111, 115; Doc. No. 104 p. 26–28).  These factual allegations considered together establish a

liberty interest in the Plaintiff Parents.

O.P. claims she was denied her right to bodily integrity.  The U.S. Supreme Court has

held that liberty interests include the right to bodily integrity, which also encompasses a student's

right to be free from substantial physical abuse at the hands of a teacher.  See e.g., Casey, 505

U.S. at 847–49 (describing cases in which liberty interests for purposes of substantive due

process have been found in marriage, family and bodily integrity); Ingraham v. Wright, 430 U.S.

651, 673–74 (1977) (finding corporal punishment by a teacher is within the scope of a student's

protected liberty interest).  Therefore, O.P. has established here that she has a protected liberty

interest.

Third, Plaintiffs must show that the conduct of Defendants was so egregious that it

"shocks the conscience."  On this element of the substantive due process claim, Plaintiffs have

failed to present plausible facts establishing conscience shocking behavior by the eleven School

District Employee Defendants.  Although the Third Circuit has held that the right of parents to

care for and guide their children is a protected fundamental liberty interest, this interest is not

---

[10]       The allegations are: no teachers, administrators, or staff members took adequate
steps to stop the harassment (Doc. No. 71 ¶ 72); Defendant Rogan had knowledge of the
harassment (Id. ¶¶ 80, 115), Defendants Lloyd, Rossi, Michael, and Maloney met with Student
Defendant T.M. to tell her what to say in a forthcoming meeting with Defendant Dixon (Id. ¶¶
98–111); Defendant Rose had knowledge of the harassment (Id. ¶ 164); the Library Defendants
conspired to harm O.P. by interfering in the bullying investigation (Doc. No. 104 at 27);
Defendant Schaeffer pulled O.P. out of class and suggested that O.P. needed psychological help
(Id. at 27); Defendant Dixon ordered Defendant Schaeffer to inform O.P. she needed
psychological help (Id.); Defendant King decreased the likelihood of bullying cessation by telling
Defendant Dixon to deal with O.P.'s mistreatment "at the building level" (Id.); School District
Employee Defendants sabotaged the mediation process (Id.); and Defendants Lesh and Sheridan
actively ignored Plaintiffs' requests for intervention (Id. at 27–28).

without limitations. Anspach v. City of Philadelphia, 503 F.3d 256, 261 (3d Cir. 2007) (citations omitted). A plaintiff must demonstrate that there has been some "manipulative, coercive, or restraining conduct by the State"and a court will not lightly find a violation. See J.S. v. Blue Mt. Sch. Dist., 650 F.3d 915, 933–34 (3d. Cir. 2011) (quoting Anspach, 503 F.3d at 266).

Here, Plaintiff Parents have not cited any precedent where a court found a liberty interest violated under factual circumstances similar to the allegations in this case. Independent research by the Court has also failed to uncover any case factually similar. While the paucity of cases does not mean that a parent's liberty interest did not succumb to a substantive due process violation, the facts here do not demonstrate "manipulative, coercive, or restraining conduct by the State." Id. Though School District Employees may not have responded to Plaintiff Parents' complaints in a manner Plaintiff Parents felt warranted, School District Employee Defendants did not "manipulate, coerce or restrain" Plaintiff Parents. At all times, Plaintiff Parents addressed O.P.'s mistreatment at school in whatever way they desired, including meeting with school personnel and transferring O.P. to a new school. They were not prevented from pursuing their effort to have Student Defendants stop harassing O.P. Moreover, there is no evidence of manipulation here. School District Employee Defendants attempted to correct the problem, and if their efforts were not perfect in the eyes of Plaintiff Parents, School District Employee Defendants' conduct did not reach the level of manipulation. Plaintiff Parents have failed to plausibly show egregious, conscience shocking behavior that violated substantive due process.

Regarding the alleged violation of O.P.'s constitutional rights, O.P. claims that the School District Employee Defendants violated her fundamental liberty interest in bodily integrity. Plaintiff O.P. fails to establish here that this liberty interest was violated by School District

20

Employee Defendants committing conscience shocking behavior. "Those courts that have considered instances of psychological or verbal abuse by government actors have typically held that such conduct alone was not severe enough to qualify as a constitutional tort actionable under section 1983." S.M. v. Lakeland Sch. Dist., 148 F. Supp. 2d 542, 547 (M.D.Pa. 2001) (finding that a teacher scolding a minor student in front of her classmates on one occasion was not "conscience shocking" and did not rise to the level of a constitutional violation). See also Abeyta v. Chama Valley Sch. Dist., 77 F.3d 1253 (10th Cir. 1996) (finding that a teacher calling a student a prostitute in front of the student's class on several occasions over the course of a few weeks did not rise to the level of conscience shocking behavior). Here, none of School District Employee Defendants physically touched O.P. Instead, O.P. alleges that violations of her bodily integrity stem from occasions when School District Employee Defendants failed to stop the harassment by Student Defendants, when School District Employee Defendants discussed O.P. in her absence, and when Defendant Schaeffer told O.P. she should seek psychological help. (Doc. No. 104 at 26–28). Because School District Employee Defendants did not themselves make harassing comments about O.P. and never physically touched her, they did not violate O.P.'s bodily integrity. Further, the incident where Defendant Schaeffer told O.P. that she should consider psychological counseling does not rise to the level of a constitutional tort under section 1983.

In addition, while Plaintiffs may feel School District Employee Defendants did not sufficiently address O.P's mistreatment at school, the Amended Complaint demonstrates School District Employee Defendants did take steps to stop the bullying of O.P. School District Employee Defendants met with Plaintiff Parents on several occasions to discuss O.P.'s situation. (Doc. No. 71 ¶¶ 105, 114, 162 and 164). Defendant Dixon held parent conferences with Parent

Defendants (Id. ¶¶ 132–33) and tried to separate Student Defendants from each other during

lunch in the school cafeteria (Id. ¶ 107).  Defendant King, upon learning of Plaintiff Parents'

concerns, instructed Defendant Dixon to address O.P.'s mistreatment (Id. ¶ 122).  Finally, while

O.P. may have suffered harassment at the hands of her peers, the fact that this harassment

continued does not rise to the level of conscience shocking behavior by School District Employee

Defendants.

Viewing all the facts alleged in the Amended Complaint in the light most favorable to

Plaintiffs, substantive due process violations have not been established.  The facts alleged by

Plaintiff do not show conduct that meets the deliberate indifference, gross negligence or

arbitrariness, or intent to cause harm standard.  Consequently, the Motion to Dismiss Count II

against Defendants Lesh, Sheridan, King, Dixon, Rogan, Rose, Maloney, Rossi, Lloyd, Michael,

and Schaeffer in their individual capacity will be granted.

Finally, since Plaintiffs have failed to plausibly set forth sufficient facts to show a

violation of the constitutional right to substantive due process, School District Employee

Defendants are entitled to qualified immunity.  This doctrine protects government officials "from

liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald,

457 U.S. 800, 818 (1982).  When determining whether a government actor is entitled to qualified

immunity, a court must decide: (1) whether the facts alleged demonstrate that a state actor

violated a constitutional right; and (2) whether that right is clearly established so that a

reasonable person would know that the conduct was unlawful. Saucier v. Katz, 533 U.S. 194,

201–02 (2001).  A trial judge has discretion in deciding which of the two prongs to consider first,

remembering that "[qualified immunity] is broad in scope and protects 'all but the plainly incompetent or those who knowingly violate the law.'" Pearson v. Callahan, 555 U.S. 223, 236 (2009). See also Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The U.S. Supreme Court has held that the trial court should examine the second prong of the qualified immunity test only if the first prong, a constitutional violation, has been established. Scott v. Harris, 550 U.S. 372, 377 (2007). Thus, "[i]f the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002). Since the Court has found here that School District Employee Defendants did not commit a constitutional violation, they are entitled to qualified immunity and the second prong of the qualified immunity test need not be addressed.

C.   Count III: Intentional Infliction of Emotional Distress Against Student Defendants and Defendants Dixon and Schaeffer

i.   Intentional Infliction of Emotional Distress Against Student Defendants

Under Pennsylvania law, to establish a claim for intentional infliction of emotional distress, "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998) (quoting Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. 1987)). For liability to be imposed, there must be "knowledge on part of the actor that *severe emotional distress is substantially certain to be produced by his conduct.*" Hoffman v. Memorial Osteopathic Hosp., 492 A.2d 1382, 1386

23

(Pa. Super. Ct. 1985) (quoting Forster v. Manchester, 189 A.2d 147, 151 (Pa. Super. Ct. 1963) (emphasis in original)).  This high burden is difficult to satisfy under Pennsylvania law.  See Hoy, 720 A.2d at 753-54.  Further, "as a general rule, sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress."  Andrews v. City of Philadelphia, 895 F.2d 1469, 1487 (3d Cir. 1990).  The standard is not satisfied by allegations of "insults, indignities, threats," or other similar conduct.  Reimer v. Tien, 514 A.2d 566, 569 (Pa. Super. Ct. 1986) (quoting Restatement (Second) of Torts § 46, comment (d)) (ruling that a medical student who left school after a student pounded on her door and she was sent unwanted pornography did not satisfy the extreme and outrageous standard).

In DiSalvio v. Lower Merion High Sch. Dist., the court declined to dismiss a claim for intentional infliction of emotional distress where a student was sexually harassed by a school employee for several months, leading the student to eventually leave the school and relapse into bulimia.  158 F. Supp. 2d 553, 555–56 (E.D. Pa. 2001).  The court noted "[t]eacher on student sexual harassment has a character totally distinct" from harassment among peers because of the differences in "the parties' age and relative power."  Id. at 561.

The present case is distinguishable from DiSalvio because the alleged harassment was committed by students and not by a teacher.  Under this circumstance, even when the facts in the Amended Complaint are viewed in the light most favorable to Plaintiffs, they do not establish a cause of action for intentional infliction of emotional distress against the Student Defendants.  The power imbalance present in DiSalvio is simply absent here.  Student Defendants are O.P.'s peers.  While O.P. may have suffered harassment by her classmates, the conduct of the Student

Defendants does not rise to the requisite level of outrageousness under Pennsylvania law.

Student Defendants' Motion to Dismiss the intentional infliction of emotional distress claim will

be granted.

> ii.   Intentional Infliction of Emotional Distress Against Defendants Dixon and
> Schaeffer

Defendants Principal Dixon and Guidance Counselor Schaeffer also argue that Plaintiffs'

factual allegations are insufficient to state a claim for intentional infliction of emotional distress.

Intentional infliction of emotional distress is "reserved by the courts for only the most clearly

extreme and ultra extreme conduct." Hoy, 720 A.2d at 754. See also Andrews, 895 F.2d at

1486–87 (finding no intentional infliction of emotional distress where employee suffered burns

from having lime placed in her shirt, received harassing phone calls at home, and had her work

sabotaged).

When viewed in the light most favorable to Plaintiffs, the alleged acts of Principal Dixon

and Guidance Counselor Schaeffer do not rise to the requisite level of outrageousness.  Plaintiffs

allege that Dixon instructed Schaeffer to call O.P. out of class, tell her she needed psychological

help, and then send her back to class.  Defendant Schaeffer complied with these requests.  (Doc.

No. 71 ¶¶ 126–28).  These allegations may reflect poor judgment on the part of Defendants

Dixon and Schaeffer, but the conduct would not be regarded as "utterly intolerable in a civilized

society." Hoy, 720 A.2d at 754.  A student subjected to the kind of harassment O.P. underwent

may benefit from psychological counseling.  Although the better practice would have been to

notify her parents and permit them to attend the meeting, the failure to notify them in this context

does not amount to outrageous conduct.  The recommendation of seeking psychological help

does not fall within the class of conduct that would be outrageous.  Accordingly, the Motion to

Dismiss the intentional infliction of emotional distress claim against Defendants Dixon and Schaeffer will be granted.

> D.   Count IV: Invasion of Privacy Against Student Defendants

>> i.   Allegations of False Light Against Student Defendants

The Restatement (Second) of Torts § 652E provides:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

See also Choi v. Sohn, No. 01-1782, 2004 WL 627060, at *4 (E.D. Pa. Mar. 1, 2004) (quoting Curran v. Children's Serv. Ctr. Of Wyoming County, Inc., 578 A.2d 8, 12 (Pa. Super. Ct. 1990)). Publicity means "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Doe v. Wyoming Valley Health Care Sys., Inc., 987 A.2d 758, 765 (Pa. Super. Ct. 2009) (quoting Restatement (Second) of Torts § 652E)).

Here, Plaintiffs allege that Student Defendant T.M. told another student, J.W., that O.P. was no longer allowed to be friends with J.W. because J.W. is black. (Doc. No. 71 ¶ 156). Plaintiffs assert that this statement was false. (Id.) Additionally, Plaintiffs claim that the Student Defendants attributed to O.P. false statements disparaging other students and labeled O.P. as a dishonest, disloyal person. (Id. ¶ 141).

T.M.'s conduct, in telling J.W. that O.P. could not be friends with J.W. because J.W. is black, does not satisfy the publication requirement, as J.W. was the only person to which T.M. publicized this information. See Harris v. Easton Pub. Co., 483 A.2d 1377, 1384 (Pa. Super.

1984) ("Disclosure of information to only one person is insufficient."); Vogel v. W.T. Grant Co., 327 A.2d 133, 137-38 (Pa. Super. 1974) (finding no publication where Defendants only publicized to Plaintiff's employer and three relatives).

Plaintiffs' allegation that Student Defendants publicized to other students in the School District that O.P. was dishonest and disloyal also fails to meet the publication requirement. Telling some of O.P's classmates that O.P. was disloyal and dishonest is insufficient to render it "substantially certain" that these rumors would become "public knowledge." See Chicarella v. Passant, 494 A.2d 1109, 1114 n.4 (Pa. Super. Ct. 1985) (publication requires communication "to the public at large, not merely to a few persons"). For these reasons, the false light invasion of privacy claim will be dismissed.

ii.     Allegations of Publication of Private Facts Against Student Defendants

Plaintiffs make a second claim in Count IV against Student Defendants. Plaintiffs assert a claim for publication of private facts, which Student Defendants have moved to dismiss. (Doc. No. 71 at 64; Doc. No. 80 ¶¶ 29–37; Doc. No. 82 ¶¶ 9–11; Doc. No. 84 ¶¶ 8–11; Doc. No. 87 at 1; Doc. No. 88 ¶ 5). A claim of publication of private facts requires Plaintiffs to show that there was publication and that the publication would be highly offensive to a reasonable person and is of no legitimate concern to the public. See Doe, 987 A.2d at 765 (citing Restatement (Second) of Torts § 652D). The same definition of publicity that applies to a false light invasion of privacy claim is applicable to publication of a private facts claim. Id.

Here, though the publication of a vaginal yeast infection might be highly offensive to a reasonable person and is of no legitimate concern to the public, Plaintiffs have failed to satisfy the publicity requirement. The Amended Complaint vaguely asserts that Student Defendants

27

publicized O.P.'s yeast infection to "everyone." Based on the allegations in the Amended

Complaint, "everyone" would cover students at O.P.'s school and some students at another local

school, Marian Catholic School. (Doc. No. 71 ¶ 136). While having her medical condition

publicized to students in her school community and to students at Marian Catholic was

undoubtedly embarrassing and offensive to O.P., the publication was not so widespread that it

was communicated to the public at large, or to so many people that it was "substantially certain"

to become public knowledge. See Chicarella, 494 A.2d at 1114 n.4 (publication requires

communication "to the public at large, not merely to a few persons"). Therefore, the publication

of private facts claim against Student Defendants will be dismissed.

> E.    Count V: Civil Conspiracy by O.P. Against Student Defendants, Library
>       Defendants, and Defendants Dixon and Schaeffer

O.P. alleges that Student Defendants conspired with each other to harass O.P.; Library

Defendants conspired with each other to harm O.P. and to interfere with Defendant School

District's investigation of the harassment of O.P.; and Dixon and Schaeffer conspired with each

other to harm O.P.[11] Under Pennsylvania law, to establish civil conspiracy, Plaintiffs must show

"(1) a combination of two or more persons acting with a common purpose to do an unlawful act

---

[11]    As the Court reads the Amended Complaint, Count V alleges three separate
claims of conspiracy all within one Count. This seems to contravene Federal Rule of Civil
Procedure 10(b), which provides that "A party must state its claims or defenses in numbered
paragraphs, each limited as far as practicable to a single set of circumstances . . . If doing so
would promote clarity, each claim founded on a separate transaction or occurrence . . . must be
stated in a separate count or defense." Because of the manner in which Count V is drafted, there
is confusion as to who conspired with whom. It appears, however, that Plaintiffs are alleging that
Library Defendants conspired among themselves, Student Defendants conspired among
themselves and Defendants Dixon and Schaeffer conspired among themselves. The Court's
analysis is based on this assumption. However, to the extent that Plaintiffs intended to allege that
these groups conspired with each other or with other Defendants not named in this Count, the
analysis remains the same.

or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in

pursuance of the common purpose, and (3) actual legal damage." Phillips v. Selig, 959 A.2d

420, 437 (Pa. Super. Ct. 2008).  Additionally, "absent a civil cause of action for a particular act,

there can be no cause of action for civil conspiracy to commit that act." Pelagatti v. Cohen, 536

A.2d 1337, 1342 (Pa. Super. Ct. 1987).

Here, the independent civil causes of action which form the basis for the civil conspiracy

claim against Student Defendants are the intentional infliction of emotional distress and invasion

of privacy claims. (Doc. No. 104 at 39).  The claim underlying the civil conspiracy claim against

the Library Defendants is the substantive due process claim.  (Id. at 40).  The claims underlying

O.P.'s civil conspiracy claim against Defendants Dixon and Schaeffer are the substantive due

process and intentional infliction of emotional distress claims.  (Doc. No. 71 ¶ 284).  Because the

Court will be dismissing each of those underlying claims for reasons noted above, the civil

conspiracy claim against Student Defendants, Library Defendants, and Defendants Dixon and

Schaeffer must also be dismissed.  See Rose v. Wissinger, 439 A.2d 1193, 1199 (Pa. Super. Ct.

1982) (holding that where there was no "basis for the defamation or the outrageous conduct

theories, there could not be any conspiracy to commit those acts")).

F.    Count VI: Civil Conspiracy by Plaintiffs Against School District Employee
       Defendants

Plaintiffs allege that School District Employee Defendants conspired with each other to

harm Plaintiffs by evading legal obligations to end the harassment of O.P. and to protect

Plaintiffs' constitutional rights.[12]  School District Employee Defendants move to dismiss Count

_____

[12]      Count VI of the Amended Complaint suffers from the same Rule 10(b) deficiency
as Count V.  There is confusion as to which Defendants are alleged to have conspired together.
As the Court reads this Count, all of the School District Employee Defendants are alleged to have

VI on the basis that Plaintiffs have failed to state a claim upon which relief can be granted.  As previously noted, under Pennsylvania law to establish civil conspiracy, Plaintiffs must show "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage."  Phillips v. Selig, 959 A.2d 420, 437 (Pa. Super. Ct. 2008).   Further, mere conclusions of law are not sufficient to support a cause of action for conspiracy.  See Clay v. Advanced Computer Applications, Inc., 536 A.2d 1375, 1382 (Pa. Super Ct. 1988), rev'd in part, on other grounds, 559 A.2d 917 (Pa. 1989).  "Proof of malice, i.e. an intent to injure, is an essential part of the conspiracy cause of action . . . ."  See e.g., Grose v. P&G Paper Prods., 866 A.2d 437, 440 (Pa. Super Ct. 2005) (citing Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979)); Doltz v. Harris & Assocs., 280 F. Supp. 2d 377, 389 (E.D. Pa. 2003).

Count VI cannot stand against Defendants Lesh, Sheridan, King, Dixon, Rogan, Rose, Maloney, Rossi, Lloyd, Michael, or Schaeffer.  Each of those defendants are alleged to have conspired to violate the substantive due process rights of O.P. and Plaintiff Parents.  As explained above in the Count V analysis as well as the Count II analysis, Plaintiffs have not stated a claim against these Defendants for the underlying substantive due process violation.

---

conspired with each other in varying combinations.  The School District Employee Defendants include: Defendant School District; Robert Lesh, President of the School District Board of Directors, in his official and individual capacity; Robert Sheridan, Member of the School District Board of Directors, in his official and individual capacity; William King, Superintendent of Schools in the District, in his official and individual capacity; Barbara Dixon, Principal, in her official and individual capacity; Kevin Rogan, Vice Principal, in his individual capacity; Melissa Rose, Vice Principal, in her individual capacity; Julie Maloney, teacher, in her individual capacity; Karyn Schaeffer, guidance counselor, in her individual capacity; Amy Lloyd, librarian, in her individual capacity; Maria Rossi, teacher, in her individual capacity; and Lynne Michael, teacher, in her individual capacity.

"Absent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy." Nix v. Temple Univ. of Com. System of Higher Educ., 596 A.2d 1132, 1137 (Pa. Super. 1991) (quoting Pelagatti v. Cohen, 536 A.2d 1337, 1342 (Pa. Super 1987)). There are no allegations that these Defendants engaged in any acts that would be actionable, absent the conspiracy itself, and this claim therefore cannot stand.

Further, Count VI cannot stand against Defendant School District. Count I, alleging violation of Title IX against Defendant School District, and Count II, alleging violation of substantive due process, cannot form the basis of a conspiracy claim because Defendant School District is the only remaining Defendant named in those Counts and one cannot conspire with oneself. See Phillips v. Selig, 959 A.2d at 437 (a civil conspiracy requires "a combination of two or more persons.").

Consequently, the Motions to Dismiss Count VI of Defendant School District and Defendants Lesh, Sheridan, King, Dixon, Rogan, Rose, Maloney, Rossi, Lloyd, Michael, and Schaeffer will be granted.

G.    Count VII: Negligence Claim Against Parent Defendants

Each of the Parent Defendants moves to dismiss Plaintiffs' claim against them for negligence on the basis that Plaintiffs have failed to state a claim upon which relief can be granted. Plaintiffs allege that each of the Parent Defendants is liable for the alleged conduct of their respective daughters. As a preliminary matter, because the Court has already found that Plaintiffs have not stated a claim for tort liability against the Student Defendants, there can be no liability for negligence on behalf of the parents.

However, even when the allegations in Count VII are viewed in the light most favorable to Plaintiffs, they do not state a claim against Parent Defendants. Under Pennsylvania law, "the

31

mere relation of parent and child imposes no liability upon the parents for the torts of the child

... but 'parents may be liable ... where negligence on the part of parents make the injury

possible.'" J.H. ex re. Hoffman v. Pellak, 764 A.2d. 64, 66 (Pa. Super. Ct. 2000) (citing Condel

v. Savo, 39 A.2d 51, 52 (Pa. 1944); Frey v. Smith, 685 A.2d 169 (1996)).  Further, the

Restatement (Second) of Torts provides:

> A parent is under a duty to exercise reasonable care so as to control his minor child
> as to prevent it from intentionally harming others or from so conducting itself as to
> create an unreasonable risk of bodily harm to them, if the parent
> (a)    knows or has reason to know that he has the ability to control his
>       child, and
> (b)    knows or should know of the necessity and opportunity for exercising
>       such control.

Restatement (Second) of Torts § 316 (1965).  Plaintiffs argue that Parent Defendants were

negligent because they knew or should have known of their duty to prevent their children from

harassing O.P. and that they failed to do so. (Doc. No. 104 at 46.)  Plaintiffs aver that parents of

seven of the Student Defendants were informed about the harassment by their respective children

at a meeting on April 12, 2010.  (Doc. No. 71 ¶ 133-34.)  Further, Plaintiffs aver that parents of

the Student Defendants, who were not at that meeting, "should have known" about their

children's behavior (Doc. No. 104 at 46.)

    First, the alleged harassment started in October 2009 and the parents were not told about

the behavior until almost six months later.  The Amended Complaint does not state what the

parents were told at the April 12, 2010 meeting about the behavior of the children or how the

parents who were not at the meeting would have known of their childrens' behavior.  More

compelling, however, is the fact that each of the incidents alleged in the Amended Complaint

occurred on school grounds, when Student Defendants were outside the control of Parent

Defendants.  "Mere knowledge by the parents of the child's mischievous and reckless disposition

is not enough to make them liable for the torts of the child; but their liability arises from the failure to exercise the control which they know they have over their child . . . ." Condel, 39 A.2d at 53. Here, Student Defendants' actions against O.P. took place while at school. Since Parent Defendants were not at school, they did not have control over their children at that time. Further, Parents cannot be deemed negligent for sending their children to school because it is their obligation to do so.

Plaintiffs cite Condel v. Savo, 39 A.2d 51 (Pa. 1944), for the proposition that parents may be found negligent for the bullying and harassing acts of their child. Condel, however, is factually different from the case at bar. In that case, parents of the child had been notified frequently by neighbors and others that their child had committed physical attacks on younger children in the neighborhood. Id. at 52. Despite this knowledge, the parents permitted the child to leave their home one evening to play in an area where other children were playing. Id. There, the child punched another child and threw him down an embankment, fracturing the victim's leg. Id. The case at bar is distinguishable because, even assuming Parent Defendants were told about their children's behavior at the April 12, 2010 meeting, this does not imply that Parent Defendants had any knowledge of the exact ongoing nature or quality of the actions of their daughters. Paragraph 132 of the Amended Complaint provides in general terms the only reference to actual knowledge by any Parent Defendant: "On or About April 12, 2010, the District gave [the parents of seven of the nine Student Defendants] actual notice of their children's unlawful behavior." (Doc. No 71 ¶ 132). Moreover, while the parents in Condel ignored the fact that their son had physically injured children in the past in the neighborhood and then allowed him to play with other children, Parent Defendants here were obliged to send their children to school. The offensive behavior took place in or about school property where parents

33

did not have control of their children.

Consequently, for these reasons the Motions of Parent Defendants to Dismiss Count VII will be granted.

H.    Count VIII: Parental Strict Liability Claim Against Parent Defendants

Parent Defendants also move to dismiss the strict liability claim.  The Court need not address the validity of holding parents strictly liable for the conduct of their children occurring in or about the school property because, as explained above, all claims against Student Defendants will be dismissed.  Therefore, *a fortiori*, the claim for strict parental liability against Parent Defendants must also be dismissed.

## VI.    CONCLUSION

Plaintiffs have successfully pled facts that plausibly support an entitlement to relief against Defendant School District under Title IX (Count I).  Consequently, the Court will deny the Motion to Dismiss the Title IX claim against Defendant School District (Count I).  No motion to dismiss the Section 1983 claim alleged in Count II against the School District has been filed.  This claim will also stand against the School District.

Plaintiffs have not plausibly shown an entitlement to relief for their § 1983 claim against Defendants Lesh, Sheridan, King, Dixon, Rogan, Rose, Maloney, Rossi, Lloyd, Michael, and Schaeffer (Count II), intentional infliction of emotional distress against any Defendants (Count III), and invasion of privacy against Student Defendants (Count IV).  Therefore, the Motions to Dismiss those Counts by those Defendants will be granted.

Moreover, Plaintiffs have not sufficiently pled a cause of action for civil conspiracy against O.P. by Student Defendants or Defendants Maloney, Lloyd, Rossi, Michael, Dixon or

34

Schaeffer (Count V), and the Motions to Dismiss that Count will be granted.  Further, Plaintiffs

have not sufficiently alleged a claim for conspiracy against O.P. and Plaintiff Parents by

Defendant School District and Defendants Lesh, Sheridan, King, Dixon, Rogan, Rose, Maloney,

Rossi, Lloyd, Michael, or Schaeffer (Count VI).  Therefore, the Court will grant the Motions to

Dismiss Count VI filed by the Defendant School District and by Defendants Lesh, Sheridan,

King, Dixon, Rogan, Rose, Maloney, Rossi, Lloyd, Michael, and Schaeffer.

Finally, Plaintiffs have failed to sufficiently plead negligence on the part of Parent

Defendants (Count VII) or parental strict liability (Count VIII), and the Motions to Dismiss these

Counts by Parent Defendants will be granted.

A court may ordinarily grant a plaintiff leave to file an amended complaint.  Here,

Plaintiffs have filed a Complaint (Doc. No. 1) and an Amended Complaint (Doc. No. 71).  At the

June 8, 2011 hearing, counsel for Plaintiffs stated that Plaintiffs reviewed the Amended

Complaint paragraph by paragraph.  Given these circumstances and the detailed nature of the

factual averments in the Amended Complaint, filing another amended complaint would be futile.

Accordingly, the Court will not grant Plaintiffs leave to file a Second Amended Complaint.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BARBARA and GEORGE PRICE, *on*      :
*behalf of their daughter O.P., a minor,*    :      CIVIL ACTION
*and individually on their own behalf,*    :
                          :      NO. 11-0095
          Plaintiffs,         :
                          :
          v.                    :
                          :
SCRANTON SCHOOL DISTRICT, *et*      :
   *al.,*                             :
                          :
          Defendants.      :

**ORDER**

AND NOW, this 6th day of January 2012, upon consideration of Plaintiffs' Amended

Complaint (Doc. No. 71); Motion to Dismiss by Ronald Evans, Lisa Ogonoski, and M.E. (Doc.

Nos. 78–79); Motion to Dismiss by Carmen Duverge, Jose Duverge, and I.D. (Doc. Nos. 80–81);

Motion to Dismiss by Nancy Hiller, Wayne Hiller, and A.H. (Doc. Nos. 82–83); Motion to

Dismiss by Gene Creegan, Yvette Creegan, and B.C. (Doc. Nos. 84, 99); Motion to Dismiss by

James Maloney, Julie Maloney, and T.M. (Doc. Nos. 87, 92); Motion to Dismiss by Anthony

Rasalla, Tina Rasalla, and A.R. (Doc. Nos. 88–89); Motion to Dismiss by Robert Walsh,

Katherine Walsh, and E.W. (Doc. Nos. 90–91); Motion to Dismiss by Barbara Dixon, William

King, Robert Lesh, Amy Lloyd, Julie Maloney, Lynne Michael, Kevin Rogan, Melissa Rose,

Maria Rossi, Karyn Schaeffer, Scranton School District, and Robert Sheridan (Doc. Nos. 93–94);

Motion to Dismiss by Cindy Petrucci, Peter Petrucci, and J.P. (Doc. Nos. 95–96); Plaintiffs'

Omnibus Brief in Opposition to All Motions to Dismiss Amended Complaint (Doc. No. 104);

Reply Brief of Gene Creegan, Yvette Creegan, and B.C. (Doc. No. 108); Reply Brief of Anthony

1

Rasalla, Tina Rasalla, and A.R. (Doc. No. 109); arguments of counsel at a hearing held on June 8, 2011; Plaintiffs' Supplement to Oral Argument (Doc. No. 115); and for the reasons set forth in the Opinion dated January 6, 2012;  it is ORDERED as follows:

(1)     Motion to Dismiss by Ronald Evans, Lisa Ogonoski, and M.E. (Doc. Nos. 78–79) is GRANTED

(2)     Motion to Dismiss by Carmen Duverge, Jose Duverge, and I.D. (Doc. Nos. 80–81) is GRANTED

(3)     Motion to Dismiss by Nancy Hiller, Wayne Hiller and A.H. (Doc. Nos. 82–83) is GRANTED

(4)     Motion to Dismiss by Gene Creegan, Yvette Creegan, and B.C. (Doc. Nos. 84, 99) is GRANTED

(5)     Motion to Dismiss by James Maloney, Julie Maloney, and T.M. (Doc. Nos. 87, 92) is GRANTED

(6)     Motion to Dismiss by Anthony Rasalla, Tina Rasalla, and A.R. (Doc. Nos. 88–89) is GRANTED

(7)     Motion to Dismiss by Robert Walsh, Katherine Walsh, and E.W. (Doc. Nos. 90–91) is GRANTED

(8)     Motion to Dismiss by Cindy Petrucci, Peter Petrucci, and J.P. (Doc. Nos. 95–96) is GRANTED

(9)     Motion to Dismiss by Barbara Dixon, William King, Robert Lesh, Amy Lloyd, Julie Maloney, Lynne Michael, Kevin Rogan Melissa Rose, Maria Rossi, Karyn Schaeffer, Scranton School District, and Robert Sheridan (Doc. Nos. 93–94) is GRANTED in part and DENIED in part.

    (a)     Motion to Dismiss Count I by Scranton School District is DENIED
    (b)     Motion to Dismiss Count II by Scranton School District is DENIED
    (c)     Motion to Dismiss Count II by Defendants Lesh, Sheridan, King and Dixon in their official capacities is GRANTED
    (d)     Motion to Dismiss Count II by Defendants Lesh, Sheridan, King and Dixon in their individual capacities is GRANTED
    (e)     Motion to Dismiss Count II by Rogan, Rose, Julie Maloney, Rossi, Lloyd, Michael, and Schaeffer is GRANTED

(f)     Motion to Dismiss Count III by Dixon and Schaeffer is GRANTED

(g)     Motion to Dismiss Count V by Julie Maloney, Lloyd, Rossi, Michael, Dixon, and Schaeffer is GRANTED

(h)     Motion to Dismiss Count VI by Scranton School District is GRANTED

(i)     Motion to Dismiss Count VI by Defendants Lesh, Sheridan, King, and Dixon in their official capacities is GRANTED

(j)     Motion to Dismiss Count VI by Defendants Lesh, Sheridan, King, and Dixon in their individual capacities is GRANTED

(k)     Motion to Dismiss Count VI by  Rogan, Rose, Julie Maloney, Rossi, Lloyd, Michael, or Schaeffer is GRANTED

(10)     The claims that remain in this case are:

(a)     Count I: violation of 20 U.S.C. § 1681, et seq. (Title IX) against Scranton School District

(b)     Count II: violation of substantive due process under 42 U.S.C. § 1983 against Scranton School District

(11)     Scranton School District shall file an answer to the Amended Complaint (Doc. No. 71) within 20 days from the date of this Order.

BY THE COURT:

*Joel Slomsky*
JOEL H. SLOMSKY, J.